# THE STATE v. LAWRENCE LASSON, Appellant.

### Division Two, February 18, 1922.

1. **WEIGHT OF EVIDENCE: Province of Jury.** It is the peculiar province of the jury to determine the credibility of the witnesses, and the weight to be given to their testimony.

2. **ROBBERY: Sufficient Evidence: Appellate Practice.** The evidence in this case is reviewed, and held to be substantial evidence tending to show that defendant was guilty of robbery in the first degree, in that, assisted by others, he forcibly grabbed from a woman on a public street a bag of money and ran away with it, and therefore it is *held* that said evidence is sufficient to sustain his conviction.

3. ————: **Or Larceny.** Evidence that defendant, assisted by others, forcibly took from a woman on a public street a bag of money and fled in an automobile which was at the place by previous arrangement, is sufficient to submit the charge of robbery to the jury, and the judgment of conviction will not be reversed on the theory that the crime, if committed, was larceny.

4. ————: **Acting Alone: Refusal of Instruction for Larceny.** Although the evidence is substantial that defendant, charged with robbery in the first degree and acting in concert with others, assisted another in forcibly taking from a woman a bag containing $2,063 and ran away in an automobile brought to the scene by previous arrangement, and therefore sufficient to sustain a conviction of robbery, yet as the woman testified that the bag was knocked from her hand by another and defendant grabbed it after it had fallen to the sidewalk and ran away with it, and there was other substantial evidence to the effect that defendant was not acting in concert with such other, but solely on his own account, without any previous arrangement or understanding with such other, he was entitled to an instruction on grand larceny, and the court erred in refusing his request to instruct on grand larceny.

5. **CROSS-EXAMINATION OF DEFENDANT: Unrelated Matters.** In the trial of a defendant charged with robbing a woman on a public street, counsel for the State, over repeated objections, on cross-examination of defendant asked him whether he had been engaged in boot-legging whiskey, whether he had been running a gambling house, whether he had been "shooting craps," and

State v. Lasson.

whether he had been selling whiskey without a license, said inquiries being in respect to matters not referred to in defendant's examination in chief, and sustaining no relation to the criminal charge upon which he was being tried. *Held*, that such inquiries were reprehensible, and knowingly made for the purpose of prejudicing the jury against defendant; and although, after the poison of said inquiries was gotten before the jury, the court told the jury to disregard them, such cross-examination was reversible error.

6. **INSTRUCTION: Good Character: Presumption.** An instruction in a robbery prosecution telling the jury that "you should take into account the testimony relating to defendant's good character as to honesty, morality, square dealing and good conduct, and give to such testimony such weight as you deem proper; but if from all the evidence you are satisfied beyond a reasonable doubt that the defendant is guilty, then his previous good character, if shown, cannot justify, excuse, paliate or mitigate the offense, and you cannot acquit merely because you may believe he has been a person of good character," is substantially correct, and if no other is submitted by defendant he cannot complain of it. Nor have the adjudicated cases condemned such instruction for that it does not contain the words, "for the law presumes that one whose character is good is less likely to commit a crime than one whose character is not good."

7. **INFORMATION: Robbery: Intent to Steal.** An information attempting to charge robbery in the first degree is not insufficient because it fails to allege that the property was taken with the intent to steal, or deprive the owner of, such property.

8. **LIMITING ARGUMENT: Thirty Minutes.** The amount of time that should be allowed to defendant's counsel to argue his case to the jury is a question that must be left largely to the discretion of the trial court; and where the issues were simple and required no extended argument, it will not be held that the court abused its discretion in limiting counsel to thirty minutes.

9. **CROSS-EXAMINATION: Defendant's Wife: Impeachment: Past Conduct.** It is reversible error to permit counsel for the State, on cross-examination, to compel defendant's wife, who is testifying in his behalf, to admit that she lived in adultery with him two years before they were married, which was about seven years before the trial, the evidence being undisputed that since her marriage she had been a good woman. The credit of a witness cannot be impeached by specific past delinquencies, nor is it allowable to a court of justice to rake in the ashes of long forgotten scandals.

Appeal from Jackson Criminal Court.—*Hon. E. E. Porterfield*, Judge.

REVERSED AND REMANDED.

*John T. Barker* for appellant.

(1) The evidence in this case is wholly insufficient to sustain the judgment of conviction. State v. Wheaton, 221 S. W. 26; State v. Bass, 251 Mo. 126; State v. Powell, 266 Mo. 108; State v. Tracy, 225 S. W. 1009; State v. Scott, 177 Mo. 665; State v. Francis, 199 Mo. 671; State v. Adkins, 222 S. W. 431; State v. Ruckman, 253 Mo. 487; State v. Nesenhcner, 164 Mo. 461; State v. Kelsay, 228 S. W. 754. (2) Any offense committed in this case was larceny and not robbery. The State's evidence shows that the bag was grabbed from the woman's hand and dropped to the sidewalk and picked up by the defendant. No weapons were used and no assault was made. State v. Parker, 262 Mo. 169; State v. Sommers, 12 Mo. App. 374; State v. Willis, 16 Mo. App. 553; State v. Monaghan, 134 Pac. 77, 146 L. R. A. (N. S.) 1149; State v. Paisley, 36 Mont. 237, 92 Pac. 566; People v. McGinty, 24 Hun, (N. Y.) 62; People v. Jones, 290 Ill. 603, 8 A. L. R. 357; State v. Fanning, 66 Ga. 167, 4 Am. Crim. 561; State v. Bowlin, 72 Ark. 530, 81 S. W. 838; Davis' Case, 2 N. Y. City Hall Rec. 32; 34 Cyc. 1799; Kelley's Crim. Law, sec. 629; Sec. 3307, R. S. 1919. (3) The cross-examination of defendant was improper. He was asked about living with his wife in adultery before marriage; about conducting a gambling house; about bootlegging whiskey, and many other specific crimes without any attempt to show a conviction. State v. Hillebrand, 225 S. W. 1006; State v. Tracy, 226 S. W. 1011; State v. Edmundson, 218 S. W. 864; State v. Webb, 254 Mo. 434; State v. Goodwin, 271 Mo. 81; State v. Seay, 222 S. W. 429; State v. Leavitt, 278 Mo. 377; State v. Swearingin, 269 Mo. 185; State v. McDonough, 232 Mo. 234; State v. Harris, 222 S. W. 420; State v. Wigger, 196 Mo.

98; State v. Gesell, 124 Mo. 535; State v. Wellman, 253 Mo. 314; State v. Vandiver, 149 Mo. 502. (4) Counsel for defendant requested an hour in which to argue this case. This request was denied and thirty minutes granted. Defendant was represented by two lawyers and the trial lasted two days; nineteen witnesses were examined and the bill of exceptions contains one hundred and seventy-eight pages. This request should have been granted. Reagan v. Co., 180 Mo. 130; Price v. Co., 219 S. W. 706; Newmann v. Co., 109 Mo. App. 221; State v. Page, 21 Mo. 257; Childers v. Com., 161 Ky. 440, 171 S. W. 149; People v. Green, 99 Cal. 564, 34 Pac. 231; State v. Wingo, 62 Miss. 311; State v. Mayo, 42 Wash. 540, 7 Ann. Cas. 881; State v. Peagler, 110 Ala. 11, 20 So. 363; State v. Hunt, 49 Ga. 255, 15 Am. Rep. 677; People v. Keenan, 13 Cal. 581; Hendricks v. United States, 101 Pac. 125; State v. Walker, 32 Tex. Crim. 175, 22 S. W. 685; State v. Dille, 34 Ohio St. 617, 32 Am. Rep. 395; Jones v. Commission, 87 Va. 63, 12 So. 226; State v. McLean, 32 Tex. Crim. 521, 24 S. W. 898; State v. Chance, 97 Ga. 346. (5) The defendant requested the court to instruct the jury on all questions of law necessary for their guidance and particularly on the law of larceny, but the court refused to give an instruction on larceny and such failure was reversible error. State v. Spivey, 204 S. W. 261; State v. Parker, 262 Mo. 169; State v. Weinhardt, 253 Mo. 629; State v. Starr, 244 Mo. 181; State v. Weinberg, 245 Mo. 575; State v. Perrigin, 258 Mo. 237; State v. Douglas, 258 Mo. 289; State v. Stewart, 278 Mo. 185; State v. Smith, 228 S. W. 1061; State v. Chick, 221 S. W. 16; State v. Goode, 220 S. W. 856; Sec. 3312, R. S. 1919; State v. Whitsett, 232 Mo. 529; State v. Holden, 203 Mo. 581. (6) The court erroneously allowed the prosecuting attorney to ask the defendant about conducting a gambling house; illegally selling liquor and committing other specific crimes. Defendant thereupon requested the court to instruct the jury that evidence of other crimes was not admitted as affecting the defendant's guilt or innocence, but merely

to discredit his testimony as a witness. The court refused this instruction and this was error. State v. Wellman, 253 Mo. 318;. State v. Jones, 249 Mo. 98; State v. Phillips, 233 Mo. 306; State v. Heusack, 189 Mo. 312; State v. Aushiger, 171 Mo. 606. (7) The cross-examination of defendant's wife in which she was asked about committing adultery before marriage, was highly prejudicial and improper. State v. Webb, 254 Mo. 434; State v. Hillebrand, 225 S. W. 1008; State v. Edmundson, 218 S. W. 865; State v. Wigger, 196 Mo. 98; State v. Tracy, 225 S. W. 1011. (8) The instruction on good character was insufficient to properly advise the jury. State v. Ferguson, 183 S. W. 336; State v. Taylor, 190 S. W. 330; State v. Hutchinson, 186 S. W. 1000; State v. Sloan, 186 S. W. 1002; State v. Whitley, 183 S. W. 317; State v. Tuttle, 192 S. W. 499; State v. Willard, 192 S. W. 437; State v. Burgess, 188 S. W. 135; State v. Santino, 186 S. W. 976. (9) The information is insufficient to support a judgment. It fails to allege that the property was taken with an intent to steal, or to deprive the owner of such property. State v. McLain, 159 Mo. 352; State v. O'Connor, 105 Mo. 121; State v. Scott, 109 Mo. 266; State v. Johnson, 111 Mo. 578; State v. Graves, 185 Mo. 718; State v. Carroll, 214 Mo. 399; State v. Sydnor, 253 Mo. 375. (10) Where defendant requests the court to instruct the jury on all questions of law necessary for their guidance, and then saves an exception for failure to do so, the point is sufficiently preserved. State v. Smith, 228 S. W. 1061; State v. Goode, 220 S. W. 856; State v. Chick, 221 S. W. 16; State v. Spivey, 204 S. W. 261; State v. Perrigin, 258 Mo. 237; State v. Douglas, 258 Mo. 289; State v. Lackey, 230 Mo. 720; State v. Weinberg, 245 Mo. 575; State v. Conway, 241 Mo. 271; State v. Cantlin, 118 Mo. 111; Sec. 4025, R. S. 1919.

*Jesse W. Barrett,* Attorney-General, and *J. H. Caruthers,* Assistant Attorney-General, for respondent.

(1)  The information is sufficient, is in approved form and follows the wording of statute.  Sec. 3307, R. S. 1919;  Kelly's Cr. Law and Prac. sec. 625;  State v. Calvert, 209 Mo. 280;  State v. Massey, 274 Mo. 584. (2)  Where there is sufficient evidence to support the verdict this court will not interfere.  State v. Cook, 207 S. W. 832;  State v. Dinkelkamp, 207 S. W. 771;  State v. Rowe, 271 Mo. 88;  State v. Long, 257 Mo. 199;  State v. Underwood, 263 Mo. 677.   (3)  Robbery in the first degree is the taking of property of one by means of violence to the person or fear of immediate injury to the person.  Kelley's Cr. Law, sec. 629.  Two or more persons knowingly acting together in the commission of an offense, what either does in carrying out the unlawful act, is the act of the others.  The testimony shows defendant was with Louis Thompson, who knocked and twisted the bag from Mrs. Huddleston's hand and that defendant knowingly and voluntarily and with common intent with Louis Thompson, principal, united with Thompson and assisted in the offense, that of taking by force and violence from Mrs. Huddleston the bag of money.  Wharton's Cr. Ev. (8 Ed.) sec. 440;  State v. Kuhlman, 152 Mo. 103;  State v. Cohen, 254 Mo. 450;  State v. Richardson, 248 Mo. 563.   (4)  Defendant was not cross-examined about living with his wife before marriage.  (a)  The testimony relative to selling whiskey, playing cards, associating with Louis Thompson, and loaning his car to Mr. Portman, was all stricken out on objection, and the jury instructed to disregard same in considering their verdict, all in accordance with the request of defendant.  (b)  He can be cross-examined on all facts and circumstances connected with the matters stated in his direct examination, or which test his recollection, means of knowledge, or weaken the force of his testimony.  Sec. 4036, R. S. 1919;  State v. Keener, 225 Mo. 500;  State v. Meyers, 221 Mo. 612;  State v. Foley, 247 Mo. 638.   (5)  A witness for the defendant in a criminal case who testifies to latter's good character may,

on cross-examination, be interrogated as to his sources of information and his knowledge of the character of the accused, although other and independent crimes charged against the defendant may thereby be disclosed. State v. Crow, 107 Mo. 345; State v. McLaughlin, 149 Mo. 32; State v. Parker, 172 Mo. 206; State v. Harris, 209 Mo. 442. Such cross-examination is largely within the discretion of the trial court. State v. Phillips, 233 Mo. 305; State v. Seay, 222 S. W. 429. (6) It is within the discretion of the court at the close of the evidence to limit the time to be occupied by counsel in addressing the jury. This court will not interfere unless the discretion is abused. State v. Page, 21 Mo. 257; State v. Linney, 52 Mo. 42; State v. Williams, 69 Mo. 112; State v. Baker, 136 Mo. 83. (7) There is no evidence that warrants an instruction on larceny. According to the testimony defendant was aiding and abetting Thompson in forcibly taking the money bag from Mrs. Huddleston, which constitutes robbery in the first degree by both. State v. Walker, 98 Mo. 110; State v. Edwards, 23 Mo. 539; State v. Green, 229 Mo. 655. (8) It was perfectly competent to show, if it was a fact, that defendant's wife had committed adultery before her marriage to affect her credibility as a witness. Even the defendant's reputation for morality may be inquired about. Kelly's Cr. Law, sec. 381; State v. Shields, 13 Mo. 237; State v. Beckner, 194 Mo. 288; State v. Edmundson, 218 S. W. 865. (9) Instruction on good character of the defendant was in approved form and sufficient. State v. Cushenberry, 157 Mo. 187. (10) The court is not required to give of its own motion instructions upon all the possible points of the case, nor all the instructions that might with propriety be given, except such as relate to good character and reasonable doubt. The instructions given in this case fully covered the law applicable to the facts and were sufficient. Sec. 4025, R. S. 1919; Kelly's Cr. Law, sec. 390. Instructions not supported by any evidence should be refused. State v. Edwards, 203 Mo. 539; State v. Green, 229 Mo. 655.

RAILEY, C.—On June 2, 1920, the Prosecuting Attorney of Jackson County, Missouri, filed, in the Criminal Court of said county, a verified information charging the defendant herein with robbery in the first degree. Defendant was duly arraigned and entered a plea of not guilty. The trial of said cause was commenced on August 10, 1920, before a jury, and the latter returned into court, on August 11, 1920, the following verdict:

"We, the jury, find defendant, Lawrence Lasson, guilty of robbery in the first degree as charged in the information, and assess his punishment at ten years in the penitentiary.

"JOHN W. ADAMS, Foreman."

The robbery is alleged to have occurred between eleven and twelve o'clock on the forenoon of May 22, 1920, directly in front of the office of the Carnes Artificial Limb Company, at 904-6 East Twelfth Street, in Kansas City, Missouri. The office of above company was on the north side of Twelfth Street, and fronts south. It is one of the busy streets of said city.

The evidence of the State tends to show that John P. Prescott, president of above company, and Mrs. W. A. Huddleston, its cashier and bookkeeper, on the morning of said May 22, 1920, obtained, from the First National Bank of Kansas City, Missouri, $2,063, with which to discharge the weekly pay roll of said company. The above money was placed in a leather bag and delivered to Mrs. Huddleston. She and Mr. Prescott were then driven to the above office in Prescott's Reo sedan, by a negro chauffeur. They stopped at the edge of the sidewalk in front of said office, and about ten feet from same. Mr. Prescott stepped out of said car on the sidewalk, followed by Mrs. Huddleston with the bag of money. The chauffeur opened the door of said car from the inside for them to get out, and remained therein during the robbery. As Mrs. Huddleston started into the office with the bag of money, two men appeared on the sidewalk near where she emerged from the car. Both were in plain view and in a foot or two of each other. One

of these men, whom she afterwards positively identified as Louis Thompson, ordered her to give him the bag. Thompson grabbed at the bag, and she tried to hold it. He finally took hold of the handle and wrenched the bag from her arm with force. Mrs. Huddleston describes the situation at this juncture as follows:

"The bag dropped after he had gotten hold of it, and the man that was with him grabbed after it, and he grabbed the bag and ran behind the car and Louis Thompson ran in front of the car."

She testified, that after she got out of the Reo sedan, another car appeared in the street, close to the one she left, and that these two men ran away in this car, which was headed west and turned south on Campbell Street.

Mrs. Huddleston positively identified Louis Thompson as the man who wrenched the bag of money from her, but could not swear that defendant was the man who ran off with the money, although he resembled the man who did so. Prescott positively identified defendant as the man who grabbed the bag of money after it fell to the sidewalk; and as being the man who pushed him down and ran off with the bag toward said car. He could not, however, identify Louis Thompson as the man who wrenched the bag from Mrs. Huddleston.

The colored chauffeur did not get off the Reo sedan, did not render any assistance, in stopping or identifying the robbers, was present at the trial, and was not sworn as a witness in the case.

The evidence of appellant tends to show that he was a small man; that no weapons of any kind were used during the robbery. He testified, at the trial, that he was not present at the time of the alleged robbery, and did not participate therein; that he was at home sick during the entire forenoon of May 22, 1920, and did not leave home before four o'clock in the afternoon of said day. In support of the above testimony, appellant produced five or six witnesses, who claimed to have seen defendant at his home on the forenoon of the above date, and that he was then sick.

A number of witnesses testified in behalf of the State, that defendant's general reputation for morality was bad. Other witnesses testified that it was good.

Prescott gave Policeman Dougherty a description of the men who committed the robbery, and recognized defendant, as being the man who grabbed the bag and ran with the money, as soon as he saw him at the police station. Policeman McGuire testified that he had known defendant for about one year before the trial; that he was also acquainted with Louis Thompson; that he had seen Thompson at defendant's place of business nearly every time he passed for the last six months.

The instruction and rulings of the court will be considered in the opinion.

Defendant, in due time, filed motions for a new trial and in arrest of judgment. Both motions were overruled, and defendant duly appealed from the judgment rendered against him.

I. It is insisted by appellant, that "the evidence in this case is wholly insufficient to sustain the judgment of conviction."

Sufficient Evidence.

We have carefully read the entire evidence the second time, and do not agree with counsel in respect to the above matter. It was the peculiar province of the jury to pass upon the weight of the evidence. The jurors were the sole judges of the credibility of the witnesses and of the weight to be given their testimony. We have set out a very fair and full statement of the general facts relating to the merits of the controversy. Mr. Prescott, the president of the company whose money was taken, stood before the jury unimpeached, and testified positively that defendant Lasson is the man who grabbed the bag containing $2,063, which was forcibly wrenched from the hands of Mrs. Huddleston by Thompson on the forenoon of May 22, 1920, in Kansas City, Jackson County, Missouri. Mrs. Huddleston testified positively that Louis Thompson was on the sidewalk within two or three feet of defendant when he forcibly wrenched from

her hands the bag of money aforesaid. She is equally as positive that the man who was with Thompson grabbed the bag of money which had fallen to the sidewalk, when wrenched from her hands, and that he and Thompson ran to and entered the automobile standing near Prescott's Reo sedan, which moved south, on Campbell Street. It is undisputed that the automobile, which carried the two robbers away, was a stolen machine. It is likewise undisputed, that Thompson had been around defendant's place of business frequently during the last six months preceding the trial. The jury had the right, in passing upon defendant's testimony and that of his witnesses, to consider the same in connection with all the facts and circumstances of the case. We are of the opinion, that the record before us contains substantial evidence, tending to show that defendant was guilty of the crime charged against him in the information. [State v. Brown, 234 S. W. (Mo.) 785 and fol.; State v. Cook, 207 S. W. (Mo.) 1. c. 832; State v. Dinkelkamp, 207 S. W. (Mo.) 770; State v. Underwood, 263 Mo. 677; State v. DeGroat, 259 Mo. 364.]

II. It is further contended by appellant that, if
Robbery or Larceny. any offense was committed, it was larceny and not robbery.

Without repeating the evidence again, we are satisfied that, taking the case as a whole, there was substantial evidence produced by the State, from which the jury had the legal right to draw the inference that defendant and Thompson were co-operating together at the time of the robbery, under a previous understanding, and that they were acting in concert in forcibly taking said money from Mrs. Huddleston, and fleeing together with same in the automobile, which was there ready for them by prearrangement. The evidence was sufficient to warrant the court in submitting to the jury the issue as to whether appellant was guilty of robbery in the first degree as charged in the information. [Section 3307, R. S. 1919;

State v. Bater, 232 S. W. (Mo.) 1. c. 1014; State v. Spivey, 204 S. W. (Mo.) 1. c. 260-1-2; State v. Graves, 185 Mo. 713, 84 S. W. 904.]

III. It appears from the record that at the conclusion of the testimony counsel for defendant requested the court to instruct the jury on grand larceny, and the court refused to so instruct. As heretofore stated, there was substantial testimony before the jury Instruction on which warranted the latter in finding deGrand Larceny. fendant guilty of robbery in the first degree. On the other hand, if the jurors believed from the evidence that defendant was not acting in concert with Thompson, but solely on his own account, without any previous arrangement or understanding with Thompson, he was entitled to have the jury told that he was guilty of grand larceny, and not robbery, if he grabbed and fled with the money in controversy, as heretofore shown. We are of the opinion that reversible error was committed by the court in refusing to instruct the jury, as requested by defendant, on grand larceny. [Sec. 3312, R. S. 1919; State v. Keeland, 90 Mo. 1. c. 339-40; State v. Parker, 262 Mo. 1. c. 180; State v. Spivey, 204 S. W. (Mo.) 1. c. 261.]

IV. Appellant assigns as error the action of the trial court in permitting counsel for the State, over the repeated objections of defendant, to Cross-Examination cross-examine the latter as to whether of Defendant. he had been engaged in boot-legging whiskey; as to whether he had been running a gambling place; as to whether he had been shooting craps; as to whether he had been selling whiskey without a license, etc.

None of these matters had been referred to by defendant in his direct examination. He was thus compelled to furnish evidence of a damaging character against himself, in respect to matters not referred to in chief, and which sustained no relation to the criminal

charge upon which he was being tried.  After the prose-
cutor had improperly gotten before the jury, over de-
fendant's objection, the damaging testimony aforesaid,
the court then told the jury, at the instance of defendant,
to disregard it.  Did the prosecutor who conducted the
above examination have reason to believe, and know, that
he was violating the law and utterly ignoring the admoni-
tion of this court in parading before the jury other al-
leged offenses which sustained no relation to the case on
trial?

In State v. Wellman, 253 Mo. 1. c. 314, the case was
reversed and remanded for a new trial on account of the
misconduct of Mr. Curtin, for indulging in the same tac-
tics which were pursued in this case, as above indicated.
In State v. Webb, 254 Mo. 1. c. 434-5, this court, in dis-
cussing Mr. Curtin's conduct under similar circum-
stances, said:

"Our whole system of jurisprudence is based on the
theory that counsel in a cause know the law and the legal
effect of the various things done by them at the trial.
Counsel for the State must have known that it was not
competent on cross-examination of the defendant to ask
him about his cutting Arthur Pigg.  True an objection
to the question was sustained, and the trial court said,
as we say, 'No defense for such a question as that.'  But
the astute lawyer for the State (Mr. Curtin) had sunk
his fangs deep in the lifeblood of the defendant—too deep
for the poison to be withdrawn.  The offense was mul-
tiplied when he asked of Ben Prock, 'Don't you know
he had trouble with countless men down there?'  The
court promptly sustained an objection.  As in the first
case, we presume that State's counsel knew that the ob-
jection would be sustained.  He had an object in asking
the question.  It was asked on the theory that the sting
would remain after the objection was sustained.  He
cannot find fault if we proceed on the same theory."

The judge who tried the Webb Case, supra, presided
at the trial of this case, and presumably knew the views

which this court entertained in respect to such conduct as that indulged by counsel for the State.

We are of the opinion, that in cases of this character, where manifestly improper testimony is intentionally sought to be injected into the case, the trial judge should not wait for an objection from defendant's counsel, but promptly strike out the question, and rebuke counsel for pettifogging in the presence of the jury. The unfair manner in which other offenses were dragged into this case, for the purpose of improperly influencing the jury, has been severely criticised, by many recent decisions of this court, some of which are as follows: State v. Harris, 283 Mo. 99, 222 S. W. 420; State v. Goodwin, 271 Mo. l. c. 82-3; State v. Swearengin, 269 Mo. l. c. 185-6; State v. Johnson, 225 S. W. (Mo.) l. c. 964; State v. Hillebrand, 225 S. W. (Mo.) l. c. 1008; State v. Burns, 228 S. W. (Mo.) l. c. 768-9; State v. Saunders, 232 S. W. (Mo.) 967-7.

In the recent case of State v. Burns, 228 S. W. l. c. 768-9, involving facts similar to those at bar, we said:

"The defendant was presumed to be innocent of any crime until proven guilty, and he was entitled to this presumption throughout the trial of the case. He was entitled to a fair and impartial trial under the Constitution and laws of this State. The duty devolved upon the trial court and prosecuting attorney of seeing that he was granted a fair and impartial trial upon the merits of the controversy. Did they perform that duty as required by law?

"We are driven to the inevitable conclusion, from reading the record herein, that the prosecuting attorney proceeded, in respect to the above matter, in utter disregard and contempt of our former ruling; that he deliberately and intentionally sought to get before the jury the improper evidence aforesaid, in order to create in the minds of the jurors the unwarranted impression that defendant had sustained improper relations with the wife of deceased, and that he had desecrated the home of the latter, etc. It is true that the prosecuting attorney did not

receive any answer to the questions propounded. It is manifest that he did not expect the court to permit the witness to answer these questions. He knew, however, that such an inquiry was improper, and condemned by this court. He evidently knew, regardless of the mild rulings of the court, the questions propounded would indicate to the jury that defendant and the wife of deceased sustained some sort of improper relations with each other, even if overruled. This conclusion is irresistible, when we come to consider the astounding speech, afterwards delivered along the same line by Judge Gossom, in the closing argument for the State, where he dwelt at great length upon the alleged conduct of defendant in destroying the sanctity of deceased's home, without any evidence to support said contention, and without any such issue being lodged in the case. The trial court has a good deal of latitude in dealing with this subject, but in cases like the one before us, where the attorneys for the State deliberately overstep the rules of propriety, ignore the positive rulings of this court, and attempt to get before the jury matters which they know are improper, for the undoubted purpose of creating in the minds of the jurors an unwarranted prejudice against defendant, in a close case like this, the ends of justice require that a new trial should be granted defendant, although the court below may have formally sustained an objection to the proffered evidence. [Levels v. Railroad Co., 196 Mo. loc. cit. 623, 624, 94 S. W. 275; Wojtylak v. Coal Co., 188 Mo. loc. cit. 286, 287, 87 S. W. 506; State v. Jackson, 95 Mo. loc. cit. 652, 653, 8 S. W. 749; Ephland v. Railway Co., 57 Mo. App. loc. cit. 162, 163; Beck v. Railroad, 129 Mo. App. 7, 108 S. W. 132; Gore v. Brockman, 138 Mo. App. loc. cit. 235, 119 S. W. 1082, and cases cited; Trent v. Printing Co., 141 Mo. App. 437, 126 S. W. 238; Moore v. Doerr, 199 Mo. App. 428, 203 S. W. loc. cit. 673; Jackman v. Railway, Co., 206 S. W. loc. cit. 247; Collier v. City of Shelbyville, 219 S. W. loc. cit. 714; Rudiger v. Railway Co., 101 Wis. 292, 77 N. W. loc. cit. 171, 172; Stratton v. Nye et al.,

45 Neb. 619, 63 N. W. loc. cit. 929; Martin v. State, 63 Miss. loc. cit. 507, 56 Am. Rep. 813; Cross v. State, 68 Ala. 476; State v. Smith, 75 N. C. loc. cit. 307, 308; Rudolph v. Landwerlen, 92 Ind. 34, 35; Magoon v. Railway Co., 67 Vt. 177, 31 Atl. 156; Tucker v. Henniker, 41 N. H. loc. cit. 322 and following.]''

It is unnecessary to extend this branch of the discussion further. Both the trial courts and counsel for the State, in view of what has been said in the preceding cases, ought to know that verdicts obtained under the circumstances of this case cannot and will not be sustained in this court on appeal, if properly challenged.

V.   It is contended by appellant that the instruction given by the court on good character is insufficient to properly advise the jury as to the law on this subject. It reads as follows:

''In determining as to the guilt or innocence of the defendant you should take into account the testimony in relation to his character as to honesty, morality, square dealing and good conduct and you should give to such testimony such weight as you deem proper; but if from all the evidence before you, you are satisfied beyond a reasonable doubt, as defined in these instructions, that the defendant is guilty, then his previous good character, if shown, cannot justify, excuse, palliate or mitigate the offense, and you cannot acquit him merely because you may believe he has been a person of good repute.''

**Instruction: Good Character.**

A similar instruction was approved in State v. Cushenberry, 157 Mo. l. c. 187.   Counsel for appellant, in his brief, in discussing the above subject, said:

''The usual and proper instruction, used for a hundred years in Missouri in criminal cases and as quoted in every book of instructions and by every writer on the subject, reads as follows:

'' 'The court instructs the jury that the previous good character of the defendant, if established, is a fact in this case which the jury ought to consider in passing upon his guilt or innocence of this charge, for the law

presumes that one whose character is good is less likely to commit a crime than one whose character is not good. But if all the evidence in the case, including that touching the previous good character of the defendant, shows him to be guilty of the charge beyond a reasonable doubt, then the previous good character of the defendant cannot mitigate, justify, palliate or excuse the offense.' ''

We have read the cases cited by appellant in support of this assertion, and do not find that any of them condemn the instruction given in this cause, or point out that the one framed by appellant's counsel should be given in lieu thereof. The instruction given by the court is substantially correct, and as no other was submitted to the court, by counsel for appellant, the latter is in no position to complain of the instruction given.

VI.   It is contended by appellant that the information herein is insufficient, for the alleged reason that it **Information.** fails to allege that the property was taken with an intent to steal, or deprive the owner of, such property. We are of the opinion that the above contention is without merit, and that the information is sufficient. [Section 3307, R. S. 1919; State v. Massey, 274 Mo. 578; State v. Eddy, 199 S. W. (Mo.) l. c. 187; State v. Williams, 183 S. W. (Mo.) 308; State v. Flynn, 258 Mo. l. c. 214-5; Kelley's Criminal Law & Practice, sec. 625.]

VII.   Appellant insists, that the trial court erred in limiting his counsel to thirty minutes in presenting this **Limiting Argument.** case to the jury, when they should have been allowed an hour for that purpose. Questions of this character should be left largely to the discretion of the trial court. The issues in this case were simple and required no extended argument. We are of the opinion that the trial court was not guilty of an abuse of judicial discretion, in limiting defendant's counsel to thirty minutes in the argument of the cause before the jury.

VIII. Defendant complains of the action of the trial court in permitting counsel for the State, over his objection, on cross-examination, to compel appellant's wife, who was testifying as a witness in his behalf, to admit that she lived in adultery with her husband two years before they were married, and which was about seven years before the date of trial. The evidence was undisputed that since her marriage she had been a good woman. The court committed error in admitting the above testimony. [Wright v. Kansas City, 187 Mo. 1. c. 692-3; State v. Gesell, 124 Mo. 1. c. 534-5-6; State v. Houx, 109 Mo. 1. c. 663; 28 R. C. L. secs. 210-11, pp. 622-3-4.]

**Impeachment.**

In Wright v. Kansas City, 187 Mo. 1. c. 692-3, Fox, J., in discussing this subject, said:

. "The immoral conduct of the plaintiff could only have been admissible for the purpose of affecting her credibility as a witness, and this could only be shown by her general reputation in the neighborhood in which she resided for chastity and virtue. 'Evidence of specific and independent immoral acts were not admissible for the purpose of impeaching her character as a witness.' "

. In State v. Gesell, 124 Mo. 1. c. 535-6, where a female witness was subjected to a cross-examination similar to the one at bar, SHERWOOD, J., said:

"In the first place the credit of a witness cannot be impeached by inquiry into specific past delinquencies, but only by facts which go to show what the general moral character or reputation therefor are, and what the general moral character or reputation for truth and veracity. In the second place it will not be allowed in a court of justice to put a witness on the rack as to past transactions, to rake in the ashes of long forgotten scandals, and to uncover the scars of old wounds in order to discredit a witness or overthrow his moral character. [Wharton's Crim. Evid. (9 Ed.) sec. 472; State v. Parker, 96 Mo. 382; I Greenleaf on Evid., sec. 459; State v. Houx, 109 Mo. 654.] "

In State v. Houx, 109 Mo. l. c. 663, where the mother of prosecutrix was being cross-examined, counsel for defendant inquired as to her past immoral conduct, etc. MACFARLANE, J., in considering this subject, at page 663, said:

"A witness should not be required to give such testimony, when it does not tend directly to prove some issue. 'And the reason is that every man is entitled to such a measure of oblivion for the past as will protect him from having it ransacked by mere volunteers; and aside from this general sanction, if witnesses were to be compelled to answer fishing questions as to any scandals in their past lives, the witness-box would become itself a scandal, which no civilized community would tolerate.' [Wharton's Criminal Evidence, sec. 472.]"

The above authorities leave no room for doubt as to the erroneous admission of above testimony.

IX.  Some other matters are complained of by appellant which, in all probability, will not be repeated in the re-trial of the case, and, hence, need not be considered here.

We have endeavored to give this case our careful and earnest consideration.  On account of the errors heretofore pointed out, the cause is reversed and remanded for a new trial.  *White* and *Reeves, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court.  All of the judges concur.