THE STATE v. WAYNE C. SUBLETT, CLIFFORD HUTCHINGS and LEGRAND WICKES, Appellants.—4 S. W. (2d) 463.

Division Two, February 18, 1928.

*E. M. Tipton* for appellants.

*North T. Gentry,* Attorney-General, and *Walter E. Sloat,* Special Assistant Attorney-General, for respondent.

BLAIR, J.—In the Circuit Court of Jackson County and on October 19, 1926, each of the appellants entered his plea of guilty to an information charging them jointly with robbery in the first degree. The punishment of each appellant was fixed by the court at imprisonment in the State Penitentiary for a term of twenty-five years. Judgment was entered accordingly. On the same day, appellants filed their motion to set aside their pleas of guilty. On October 20, 1926, appellants filed their joint amended motion to the same end. Upon same being overruled, an appeal was granted to this court.

The grounds set forth in the amended motion are that appellants had a good defense to the charge set forth in the information; that the information fails to charge any offense; that the pleas of guilty were procured by fraudulent statements and representations, made by the arresting officers, which appellants believed because of their youth and inexperience; that the sentence of twenty-five years' imprisonment against each appellant was the result of bias and prejudice against appellants and violated constitutional inhibitions against the infliction of cruel and unusual punishments, and last, but not least, appellants most strenuously urged that the trial court violated their rights by accepting their pleas of guilty without first giving them an opportunity and reasonable time to consult with a friend and an attorney.

The formal charge, to which appellants entered their separate pleas of guilty, was the stealing on October 16, 1926, of $1500 in money from one J. H. Botts, by putting him in fear, etc. On the morning of October 19th, each of the appellants signed a written confession of his participation in the robbery of a bank at Buckner, Missouri, on October 16, 1926, in which each of the appellants secured in the neighborhood of $500 in money as his share of the loot. This robbery is presumably the robbery charged as having been perpetrated on J. H. Botts, although we find nothing in the record identifying the Buckner bank robbery and the robbery of J. H. Botts, as one and the same crime.

. After the confessions had been signed, the assistant prosecuting attorney called in attorney Elias Greenman and told him appellants had no counsel and asked him to represent them. Appellants were twenty, twenty-one and twenty-three years of age, respectively. Mr. Greenman was a lawyer of twenty years' experience at the bar in Kansas City and had served two years as assistant prosecuting attorney. So far as this record discloses, he was a reputable lawyer in good standing at said bar. Mr. Greenman was informed by appellants that they had signed confessions and that they intended to enter pleas of

guilty. According to Mr. Greenman's testimony, he asked appellants if they wanted to communicate with any one and they told him they did not. He accompanied appellants when they were taken before the court for arraignment and thereupon the court appointed him as their attorney and entered such appointment of record. Mr. Greenman waived formal arraignment for appellants and each of them thereupon entered a plea of guilty.

Nearly ten pages of the record are used by the transcript of the examination of appellants made by the trial judge after the pleas of guilty had been entered and before he sentenced them. Judge Austin inquired concerning the age, previous residence, family connection, former occupation, education, previous conduct, etc., of each of the appellants. He asked each one of them how he came to commit the crime. Thereupon Judge Austin reviewed the gravity of the offense and called attention to the fact that, when men enter a bank to rob it with weapons in their hands, they are not only robbers, but potential murderers. He then imposed a term of imprisonment of twenty-five years as the punishment of each appellant.

Upon the hearing upon the amended motion to set aside their pleas of guilty, appellants were permitted to introduce testimony. There was not a word of testimony of any mistreatment of them at the hands of the officers before their confessions were procured. It appeared that they were questioned from the time of their arrest at about seven to 7:30 o'clock in the evening until about two o'clock the next morning. We gather from the testimony that the money was recovered from the apartment where the three appellants had been living together before the confessions were procured, because each appellant in his written confession identified the division of the money respectively allotted to himself. Appellants claimed that they were awakened by the officers about five o'clock next morning and told that they had better confess; that they would probably get thirty-five-year terms if they stood trial and that they would probably get lighter sentences if they entered pleas of guilty. These representations were said to have been made by the arresting officers, and not by any one connected with the prosecuting attorney's office. Soon thereafter a confession was procured from each one of the appellants.

They said that attorney Greenman came to see them. They had not selected him and testified that they would not have selected him as their attorney had they known that he was a close personal friend of the prosecuting attorney. Each of the appellants was shown his written confession and, over the objection of counsel, admitted that said confession was true in every particular.

The fathers of the respective appellants were brought in. They lived in close proximity to Kansas City and all appeared to be re-

spectable and honorable men. None of them knew of the sad plight of his accused son. Each said he would have employed counsel and would have used every means at his command to aid his son in his trouble, if he had been advised thereof.

Much is made of alleged promises of leniency if appellants would confess. Appellant Hutchings testified on this proposition as follows:

"Q. Will you tell the court why it was they all questioned you from eight o'clock until the following morning, and you did not make any statement until the following morning, and then did make one, what induced you to do it? A. Well, I was told I would probably get a lighter sentence if I would make a statement than if I lost the trial before a jury.

"Q. Did you believe that? A. Yes, sir.

"Q. Did you rely upon that? A. Yes, sir.

"Q. Is that what induced you to make that statement? A. Yes, sir."

Appellant Sublett testified as follows:

"Q. And how long did they question you? A. They questioned me from about eight or eight-thirty until about two o'clock in the morning, until they took us up to our cells.

"Q. Until they took you up to your cells? A. Yes, sir.

"Q. Then did they question you again, and if so, when? A. Yes, sir; about five o'clock I was waked up by the jailer.

"Q. After sleeping about three hours, or being in bed about three hours? A. Yes, sir, after being in bed about three hours I was waked up by the jailer and told if I would come down and turn State's evidence and plead guilty and tell all I knew I would get leniency; but if I didn't I would get about thirty-five years; and he would give me three-quarters of an hour to get down and do this.

. . .

"Q. Why was it that you waited until the following morning to make this statement? What induced you to make the statement at that time? A. I didn't know what to do.

"Q. Were any promises made. A. There weren't any promises exactly. They just told us that we would probably get off with a lighter sentence, and if not we would get about thirty-five years."

Appellant Wickes testified as follows:

"Q. And what induced you to sign it, if anything? A. Well, they told us—'Mac,' the jailer there, came up and told me the other two boys had made a confession, and that I had just as well; that I would get off lots easier if I did.

"Q. Did you believe you would get off lots easier? A. Yes, sir.

"Q. Did you rely upon that? A. Yes, sir.

"Q. Is that what induced you to make that statement? A. Yes, sir."

The foregoing excerpts not only show that no promises of leniency were made to appellants by any one authorized to speak for the prosecuting attorney or the trial judge; but affirmatively show that nothing whatever of a definite nature was promised to appellants. The most they claim to have been said is that they would "probably" receive leniency. Appellants spoke of an impression that they would be given jail sentences, but one of them testified that by jail sentence he meant confinement behind bars and that he did not mean that he thought he would not be sent to the penitentiary.

It is manifest that there would have been no motion to set aside the pleas of guilty and no subsequent appeal had not appellants been disappointed at the length of the terms of imprisonment imposed upon them by the trial judge. It should go without saying that the punishment to be imposed rested entirely in the sound discretion of the trial judge and is no business of this court, if due conformity was had to formal requirements in imposing sentence. The representative of the State is not justified in saying in his brief that "after reading the evidence in this case and viewing it from every angle, that, in the face of all the facts, there is a grave question as to whether or not the court went too far in assessing a penalty of twenty-five years." Such concession is entirely gratuitous on this record. The extent of the punishment was the sole concern of the trial court.

While appellants assigned several reasons why their pleas of guilty should be set aside, they rely in this court solely upon the fact that the trial judge did not give them an opportunity and a reasonable time to talk with a friend and an attorney of their own choosing before accepting their pleas of guilty. They say that the trial judge violated Section 3682a, Laws 1923, page 159, which is as follows:

"Any judge, . . . who shall accept of a plea of guilty from any person charged with the violation of any statute . . . without first giving the person charged with an offense an opportunity and reasonable time to talk with a friend and an attorney, shall be deemed guilty of a misdemeanor, and on conviction shall be punished by a fine of not exceeding one hundred dollars, or by imprisonment in the county jail not exceeding three months, or by both such fine and imprisonment; and in addition, shall forfeit his said office."

While a mere reading of the foregoing statute suggests doubt of its constitutionality in so far as it purports to control the exercise of judicial discretion by the legislative department, we need not consider the statute from that angle and will assume, for the purposes of this case, that the statute itself is valid.

Appellants undoubtedly were granted the privilege of talking with an attorney within the meaning of said statute. There is no merit in appellants' claim that they were entitled to confer with counsel of their own choosing. When they appeared without counsel of their own, the court had the right to appoint one for them and there is nothing in the record indicating the least impropriety in appointing Mr. Greenman.

It does not appear, however, that Judge Austin asked either of the appellants if he wanted to talk with a friend before entering his plea of guilty. The statute does not require that the friend should be a relative. While attorney Greenman testified that the appellants told him they did not care to talk to any one, it does not appear from the transcript that he communicated that fact to the trial judge. We will assume, for the purposes of the opinion, that the trial judge did not give appellants "an opportunity and reasonable time to talk with a friend," in addition to conferring with an attorney. The statute seems to require both.

Assuming that the trial judge violated the 1923 Act to that extent, it does not follow that the pleas of guilty were not legal and binding on appellants or that the trial judge could not render a valid judgment against appellants on their pleas without giving them an opportunity and reasonable time to talk to a friend and an attorney. The statute pre-supposes the valid acceptance of a plea and the imposition of sentence upon such plea and prejudice to the defendant through the occurrence of such valid acts. It undertakes to punish the judge, justice of the peace or police judge who thus takes advantage of a defendant and accepts his plea of guilty and thereby causes injury to him by accepting a valid plea of guilty without asking him if he desired to talk to a friend and an attorney.

The act is not and does not purport to be an act defining procedure in criminal cases, as does Section 4057, Revised Statutes 1919, for example, which requires allocution of the defendant before he may legally be sentenced upon a verdict finding him guilty of a felony. Even if the trial judge was technically guilty of violating the statute and even if the statute be valid, which we need not here consider, such violation does not affect the validity of the judgment entered upon the appellants' pleas of guilty in the trial court.

As before said, if the trial judge had the right to accept the pleas and to enter judgment thereon, the extent of the punishment was for his exclusive consideration and determination. The appellants conceded that their confessions were true in every detail. They admitted their guilt. They had no reasonable ground to expect light sentences. They were young men of intelligence and some business experience. They committed one of the gravest crimes denounced by our criminal statutes. No doubt they were disappointed and

shocked at the punishment imposed by the trial judge, which they regarded as extremely severe. That is the sum and substance of their grievance, when the record is carefully scrutinized.

Counsel suggests that the prosecuting attorney was seeking to make a record for speed and efficiency in the prosecution of crime in order to further his candidacy for re-election at the impending election. An effort was made to show something of that sort, but the trial judge excluded it and we think very properly so. The prosecuting attorney was not on trial. The trial judge was the only person who did anything of which appellants make complaint in this court.

Likewise, the effort to show that it was sought to "railroad" appellants forthwith to the penitentiary has no bearing on the question before us. It was not shown that the trial judge issued instructions to the clerk to prepare the commitments at once. For aught the record shows, the sheriff may have had a number of other persons ready to convey to the penitentiary and himself asked for the commitments for appellants in order that he might include them among the prisoners to be taken.

We have carefully examined the record and find that appellants have failed to show that the trial judge abused his discretion in overruling their motion to set aside their pleas of guilty, and the order overruling same is affirmed. All concur.