**STATE of Missouri, Respondent,**

v.

**Jack Leroy RILEY, Appellant.**

**No. 51070.**

Supreme Court of Missouri,

Division No. 1.

Oct. 11, 1965.

Norman H. Anderson, Atty. Gen., Donald L. Randolph, Asst. Atty. Gen., Jefferson City, for respondent.

John Grossman, St. Louis, for appellant.

DONNELLY, Judge.

Defendant, Jack Leroy Riley, was convicted of robbery by means of a deadly weapon under § 560.120 RSMo 1959, V.A.M.S., by a jury in the Circuit Court of the City of St. Louis, and his punishment was assessed at imprisonment in the State Penitentiary for a term of ninety-nine years. Following rendition of judgment and imposition of sentence in accordance with the verdict, an appeal was perfected to this Court.

Defendant contends: (1) that the trial court erred in refusing to permit defendant to discharge his court-appointed attorney; and (2) that the trial court abused its discretion in refusing to grant defendant a continuance for the purpose of procuring the services of counsel of his choice.

The trial proceedings began in Division No. 10 in the Circuit Court of the City of St. Louis on June 15, 1964. Before the voir dire examination of the jury and out of the hearing of the jury panel the defendant advised the Court that he wished to discharge his court-appointed counsel, Mr. John Grossman. The Court refused his request. Defendant then asked leave to question Mr. Grossman. This request was granted and defendant inquired as to whether Mr. Grossman was in good standing. The Court answered that counsel "is an attorney in good standing and a very able and competent attorney, and has been a member of this Bar for many, many years, and personally known to the Court."

Defendant then questioned his court-appointed counsel, as follows:

"THE WITNESS: Do you personally feel, Mr. Grossman, that you have enough experience in criminal law in this state, to defend me on this charge?

"MR. GROSSMAN: I have not.

"THE WITNESS: Did you not tell me in February '64 that you wanted me to

write the Judge, to get you off the case, because you were not competent to defend me on a criminal case?

"MR. GROSSMAN: I did.

"THE WITNESS: Tell me, Mr. Grossman, have you not written or spoken to the Judge, in regards to being taken off the case?

"MR. GROSSMAN: I have spoken to Judge McMullan and to Judge Walsh."

Defendant then stated as follows:

"THE WITNESS: * * * I make a motion for a continuance, because in the duration of the summer my parents and relatives will get me money to hire a good legal counsel; that is, a criminal lawyer."

Defendant, on cross-examination, testified that he had no money and no expectancy of earning any; that he had been in the City Jail for eight months; that he expected his family, if given time, to come up with the money to hire a lawyer to represent him; that he knew eight months before, in November, that the charges against him were serious but had never requested aid from his family.

Thereafter, voir dire examination of the jury panel was conducted and the Court declared an adjournment to June 16, 1964. At 5:25 p. m. on June 15, 1964, the following occurred out of the presence of the jury but in the presence of defendant:

"THE COURT: All right, Mr. Grossman, you may proceed.

"MR. GROSSMAN: My name is John Grossman; I have been a member of the Bar of the State of Missouri for many years—

"THE COURT: (Interrupting) How many years have you been a member of the Bar?

"MR. GROSSMAN: Forty-seven.

"THE COURT: Forty-seven years?

"MR. GROSSMAN: Yes, sir. I am going to offer in evidence, or dictate into the evidence, a statement—

"THE COURT: (Interrupting) Into the record, you mean?

"MR. GROSSMAN: Into the record, which is offered for the purpose of supporting the defense application for a continuance. I am offering this statement on my own behalf as well as on behalf of the defendant.

"I advised the defendant upon being appointed that I felt, and I still feel that I am not qualified to participate, or to act for him—

"THE COURT: (Interrupting) Why do you feel that?

"MR. GROSSMAN: I am getting to that, your Honor.

"THE COURT: All right.

"MR. GROSSMAN: That I didn't feel I was qualified to act for him, in the defense of a case of so serious a nature. I was not advised, nor do I believe that the defendant was advised until this morning that the State was demanding the death penalty. I was not advised directly of the fact that the case was pending—until last Wednesday, which was June 10th, of the fact that this case was going to trial. I had always been of the belief that so far as the State was concerned, it was going to proceed with the trial in a charge against the defendant and his co-defendant, and that the State was going to prosecute the case of the co-defendant Jeff Hanger first.

"I feel that I am not qualified to act as this man's attorney for the reason that in the last—I don't believe I have tried a criminal case in over thirty years. I have not been conversant with the rules of procedure, which have changed so drastically in the last few years, particularly with refer-

ence to criminal law.; I have not followed the changes made with reference to the substantive law, and in addition to that, experience would be highly—which I regard would be highly necessary, in the defense of a crime as serious as the one before the Court.

"I feel that the State would not be prejudiced by this continuance in allowing the defendant additional time within which to hire counsel of his own choosing.

"I appreciate the fact that there has been some six or seven or eight months elapsed since the defendant was charged with this crime, but during that period of time he had been led to believe that his case would not be tried since it was his belief that the State was going to try Hanger first—or, at least try the murder charge first. The Defendant here has advised the Court that he is without funds, and that he hopes to raise the funds, if the case is passed over until September. That has been my suggestion, that the case be passed to September, and that the defendant be given an opportunity to retain counsel, and with the instructions to report back to this court by August 15th, on whether or not he has retained counsel. If, on August 15th, he has not retained counsel, and so advises the Court, then I would be very glad, as I am now, to defend the defendant."

The motion for continuance was overruled and the case went to trial on June 16, 1964.

During the course of the trial, Mr. Grossman again asked to be relieved as counsel for defendant and was refused.

In State v. Glenn, Mo., 317 S.W.2d 403, 406, it is stated: "Art. I, Sec. 18(a), Constitution of Missouri, 1945, V.A.M.S., provides 'That in criminal prosecutions the accused shall have the right to appear and defend, in person and by counsel; * * *.' In aid of this provision it is provided by § 545.820 RSMo 1949, V.A.M.S., that 'If any person about to be arraigned upon an indictment for a felony be without counsel to conduct his defense, and be unable to employ any, it shall be the duty of the court to assign him counsel, at his request, not exceeding two, who shall have free access to the prisoner at all reasonable hours.' See also the provisions of Supreme Court Rule 29.01, 42 V.A.M.S."

However, the selection of counsel is within the discretion of the trial court and a trial court does not abuse its discretion in failing to assign an accused's choice. State v. Whitaker, Mo.Sup., 312 S.W.2d 34; State v. Sublett, 318 Mo. 1142, 4 S.W.2d 463.

Here, defendant contends that the trial court forced Grossman upon defendant and refused to discharge him as his court-appointed attorney. In State v. Warren, Mo.Sup., 321 S.W.2d 705, after defendant had refused the services of the public defender and had dismissed two court-appointed attorneys, he stated he wanted to represent himself. The trial court, over defendant's objections, appointed counsel to defend him and the action of the trial court was sustained. See also State v. Greaves, 243 Mo. 540, 147 S. W. 973. In Johnson v. United States, U.S.C.A. 8, 318 F.2d 855, cited by defendant, it was recognized that a Court should not force an attorney on an accused if the accused desires to try his own case; however, in the Johnson case, the accused was permitted to try his own case, and then complained, and his conviction was affirmed. There is nothing in the record to show that defendant was harmed by Grossman's efforts or that his representation was ineffective. On the contrary, we have reviewed carefully the entire record in the trial court and conclude that Grossman performed capably and diligently and that defendant had a fair trial. Further, the record does not support defendant's present contention that he desired to try his own case. This point is ruled against defendant.

The next question is whether the trial court abused its discretion in denying de-

fendant's request for continuance, and in going to trial on June 16, 1964. See Annotation, 66 A.L.R.2d 298, 300, 307.

 In State v. Ross, Mo.Sup., 375 S.W.2d 182, 185, it was said: "It is the general rule that the granting or refusing of an application for a continuance rests within the sound discretion of the trial court. State v. Belleville, Mo.App., 362 S.W.2d 77; State v. White, Mo.App., 313 S.W.2d 47. The action of the trial court with respect to the requested continuance is subject to appellate review. State v. Jackson, 344 Mo. 1055, 130 S.W.2d 595, 596. Upon such review, each case must be judged upon its peculiar facts when the propriety of the granting or refusal of a request for continuance is challenged. State v. Maddox, 117 Mo. 667, 23 S.W. 771, 775."

■ The facts here are that defendant had been in jail for eight months, at all times fully cognizant of the severity of the charges against him, and that his counsel had been appointed four or five months before the trial. Defendant had done nothing in an effort to procure counsel of his own choice. The trial court was of the opinion that the motion for continuance was simply dilatory. We agree.

Defendant cites the cases of State v. Kauffman, 329 Mo. 813, 46 S.W.2d 843, 846; State v. Wade, 307 Mo. 291, 270 S.W. 298, 301; State v. Maddox, 117 Mo. 667, 23 S.W. 771. In the Kauffman case, the accused, denied a continuance, was deprived thereby of the right to adequately prepare an insanity defense, the only defense he had. More time was required for examination and observation of accused before a conclusion could be reached as to his mental condition. In the Wade case, the accused sought a continuance in order to procure the attendance of witnesses absent or too ill to testify. These witnesses were material to his defense. In the Maddox case, the accused sought a continuance in order to procure the attendance of a witness too ill to testify in Court or by deposition and

by whom accused expected to prove an alibi. None of these cases are controlling here. The trial court did not abuse its discretion in denying defendant a continuance.

An examination of the record as required by S.Ct. Rule 28.02, V.A.M.R., discloses no error. The judgment is affirmed.

All concur.