## THE STATE v. AUSTIN GREAVES, Appellant.

### Division Two, June 1, 1912.

1. **MURDER: Evidence: Motive.** It was not error, in this prosecution for murder, to admit evidence of the arrest of defendant, before the killing, upon a charge of attempted arson made by the deceased. Such evidence was competent to show motive.

2. ————: **In First Degree: Instructions.** Where there was evidence from which the jury could draw the conclusion that the killing was done willfully, deliberately, premeditatedly and of malice aforethought, the question of defendant's guilt of murder in the first degree was properly submitted to the jury.

3. **MANSLAUGHTER: Heat of Passion: Instructions.** Where the defendant's own testimony shows that he left his seat on his upstairs porch, went into the house and got his pistol, returned to the porch, walked down a stairway and shot deceased, saying deceased threatened to kill him and "reached to his hip-pocket," there was no error in failing to give an instruction on manslaughter in the fourth degree, as for a killing done in the heat of passion.

4. **MURDER: Self-defense: Appearances: Instructions.** Where an instruction on self-defense told the jury that the defendant had the right to act upon appearances, error cannot be grounded on appeal upon the insistence that the instruction should have said further, "the defendant had the right to act upon appearances, though it might thereafter turn out that the appearances were false." The attention of the trial court was not called to this alleged omission either at the trial or in the motion for a new trial.

State v. Greaves.

5. ———: Threats: Instructions. In a prosecution for murder the jury should be limited in the instructions to the consideration of communicated threats in determining whether the defendant was justified in acting on appearances and killing deceased.

6. ———: Counsel Appointed by Court Over Defendant's Objection: Appeal. Where the record shows that only benefit came to defendant from the efforts of his counsel, error cannot be grounded upon the fact that the defendant objected to the appointment of such counsel to defend him.

7. ———: Insanity: Instructions. Where the Supreme Court can find in the record no foundation for the claim that the defendant was insane at any time, and the trial judge could have observed any indications thereof in the trial, the refusal to give an instruction upon insanity as a defense in a trial for murder, was not error.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin,* Judge.

AFFIRMED.

*Aug. Walz, Jr.,* for appellant.

(1) The court erred in admitting the testimony as to the arrest of defendant, on the charge of arson, at least twenty days before the commission of the crime with which this defendant is charged, the testimony being incompetent and irrelevant in that such testimony is prejudicial to defendant and tends to prejudice the minds of the jury against him and was compelling defendant to meet charges of which the information gives no notice and permits the jury to infer from the commission of one crime that the defendant is guilty of the crime charged. State v. Speyer, 194 Mo. 460; State v. Speyer, 207 Mo. 540; State v. Hyde, 234 Mo. 201. (2) The court erred in submitting to the jury the question of murder in the first degree; there was nothing in the evidence that would have justified a conviction of murder in the first degree. For in the prosecutions for murder in the first

degree, deliberation and premeditation are never presumed. They must be shown in order to make out the offense—State v. Lane, 64 Mo. 319—as the law is well settled in this State that, where it is shown that the accused shot and killed his victim with a deadly weapon, and nothing more appears, then the law will presume the crime was murder in the second degree. State v. Anderson, 98 Mo. 461; State v. Fitzgerald, 130 Mo. 434; State v. Minor, 193 Mo. 598. If deliberation means prolonged premeditation, as defined by this court in State v. Speyer, 207 Mo. 552, the instruction as to murder in the first degree was not justified by the evidence. There is testimony that tends to show that a few minutes prior to the shooting, Frank Steveson, who testified for the State, says, there was a quarrel before the shooting. For if a quarrel arose after he went down stairs to order Hunter away and if the killing was without malice aforethought, it is manslaughter in the fourth degree. State v. Speyer, 207 Mo. 556. (3) The court failed to instruct the jury that the defendant had the right to act upon appearances, though it might thereafter turn out that the appearances were false if he had reasonable cause to believe, and did believe, it to exist. State v. Darling, 202 Mo. 163. Whenever the court, in a criminal case, undertakes to instruct on a question of law, the instruction should guide the jury fairly whether the attention of the court is drawn to the matter, or proceeds of its own motion. State v. Harris, 232 Mo. 317. (4) The court erred in giving instruction five, on the grounds that this instruction is erroneous and confusing, and deprives the defendant of his rights under the law. State v. Darling, 202 Mo. 150. This instruction made it incumbent upon the defendant to show that threats had been made prior to the shooting and that they were communicated to him and does not justify the defendant acting upon appearances at the time of the shooting, unless threats had been made

and communicated to him prior to the shooting. (5) The court erred in refusing to give the instructions asked by the defendant as to whether or not the defendant was insane at the time of the commission of the offense, since the commission of the offense or since the impaneling of the jury. As the record of this case will show that the defendant's actions were such that a jury should have had an opportunity to pass' upon the man's mental condition during the progress of the trial, the question as to his sanity or insanity should have been submitted to them. The instruction asked, though it may be erroneous, is sufficient to require the court to instruct as to questions presented by such erroneous instruction. State v. Moore, 160 Mo. 443; State v. Reed, 154 Mo. 122. (6) The court erred in refusing to permit the defendant to try his own case and without the assistance of counsel. The court can only appoint or assign counsel for a defendant charged with a felony when requested by the defendant, and when the defendant fails to request that counsel be appointed he waives his statutory right. In this case the defendant most strenuously objected to the court appointing counsel, but insisted that he be granted his right to conduct his case without counsel, and which he had a right to do under art. 2, sec. 22 of the Constitution. State v. Moore, 121 Mo. 522. Sec. 5164, R. S. 1909, imposes a duty on the court to appoint counsel for a defendant charged with a felony, when requested by the defendant. State v. Terry, 201 Mo. 701.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

(1) The court did right in appointing counsel. The record shows that counsel was very considerate in permitting the appellant to represent himself throughout the trial, at the same time preserving all of appellant's rights in questioning the witnesses and

filling up the gaps as to matters which the appellant had not covered by his own inquiry. (2) The instructions (a), as to murder in the first degree, defining the terms willfully, deliberately, premeditatedly, malice and malice aforethought; (b), presumption of intention in the use of a deadly weapon at some vital part, infers presumption from same; (c), murder in the second degree; (d), self-defense; (e), threats; (f), the reason of the admission of threats; (g), as to defendant's declarations; (h), information, formal charge, presumption of innocence, reasonable doubt and credibility of witnesses; (i), competency of defendant's testimony; (j), refused instructions, are in proper form. (a), State v. Gatlin, 170 Mo. 354; State v. Spaugh, 200 Mo. 571; State v. Rasco, 239 Mo. 535; (b), State v. Brown, 188 Mo. 451; (c), State v. Todd, 194 Mo. 377; (d), State v. Darling, 202 Mo. 150; (e), State v. Darling, 199 Mo. 168; State v. Edwards, 203 Mo. 528; (f), State v. Parker, 172 Mo. 191; (g), State v. Clow, 131 Mo. App. 548; State v. Chappell, 179 Mo. 324; (h), State v. Speritus, 191 Mo. 24; State v. Bond. 191 Mo. 555; (i), State v. Taylor, 134 Mo. 109; (j), State v. Coates, 174 Mo. 396. The court properly refused the instruction asked by the defendant for the reason insanity is not made a defense and there is no evidence that the defendant was insane. The appellant did not ask an instruction on manslaughter in the fourth degree, and is therefore in no position to complain. If he desired an instruction upon manslaughter in the fourth degree, he should have asked the court to give said instruction. R. S. 1909, sec. 5231; State v. McCarver, 194 Mo. 717; State v. West, 202 Mo. 128. Instruction 4 follows the law of self-defense. The authorities cited by appellant do not mitigate against this instruction. Instruction 5 told the jury they must consider all the threats which they might believe from the evidence were made by the deceased against the appellant. State v. Smith, 114 Mo. 406. This instruc-

tion does not fall within the line of the Darling case, because it tells the jury that "they should consider all the threats which you may believe from the evidence were made by the deceased against the defendant." R. S. 1909, sec. 4451. If the defendant desired an instruction on manslaughter, or on any other phase of the case, that he thought was not covered by the instructions given by the court, he should have first saved his exceptions to the court's failure to so instruct and then requested the court to instruct upon those phases of the case upon which he desired instructions by pointing them out. The trial court is entitled to the fair treatment rule. State v. Vinso, 171 Mo. 591. The court submitted to the jury the questions of murder in the first and second degrees, and that question was properly left to the jury under appropriate instructions. The jury convicted of the higher grade of offense, that is to say, murder in the first degree. Appellant is in no manner prejudiced by reason of the verdict as murder in the second degree was submitted to them and they found him guilty of murder in the first degree. He is, therefore, in no position to complain. State v. Fitzgerald, 130 Mo. 435.

ROY, C.—The defendant having been convicted of murder in the first degree in the circuit court of the city of St. Louis, and sentenced to life imprisonment, has appealed.

He lived on "Dago Hill" in that city; and the deceased, Hunter, lived near him in the same block.

Defendant was the janitor of a "flat" building, which seems to have been untenanted at the time, except by the defendant and his family, consisting of his wife and several children. The deceased had several children. The defendant was charged by his neighbors with persecuting their children, and there were some countercharges.

243 Sup.—35

A member of the police force, over defendant's objection and exception, was permitted to testify that shortly prior to the killing he arrested the defendant on a charge of attempted arson made against defendant by Hunter, and that defendant knew that Hunter was the cause of the arrest.

The evidence showed that the prosecution for arson was dropped.

The evidence for the State tended to prove that defendant was sitting on an upstairs porch, and that he got up, went into the house, got a pistol, came back on the porch, passed down the steps into his back yard and looked around a coal shed and then turned and went back to his gate and stepped out beyond the view of the State's witnesses, and in a few seconds two shots were fired. Hunter fell and died with one shot in his back and one in the back of his neck, both about two and a half inches to the left of the spine. No weapon of any kind was found on Hunter.

Defendant's evidence tended to prove threats by Hunter against defendant and in his presence. That defendant had been mistreated by the neighbor children. That just before the shooting defendant was sitting on his porch with his family, when some missile was thrown from below, striking near defendant and falling on the porch, and that defendant got his pistol and went downstairs and got into a quarrel with Hunter who was daring him to come down. The defendant testified that Hunter threatened to kill him and "reached to his hip pocket" as if to draw a gun, and that defendant shot in self-defense.

During the giving of defendant's testimony the following occurred:

"Q. For what purpose did you go into the house and get the gun? A. For what purpose?

"Q. What caused you to go into the house and get your gun? A. The cause was that he throwed that missile, I guess. I thought the children was in

danger, and I was not going down to have any fric-
tion. It is just for such emergencies as that we kept
our gun in the house. I could have shot that man in-
stead from the house, but he was not doing anything
to me then. He threatened my life, and this time he
was threatening my life.

"Q. How far was he standing from the porch?
A. Not far. It is immaterial. I know I stepped off
and got up and walked down deliberately. My wife
didn't know I had anything near my hand.

"Q. When you went into the room to get the
gun, had you made up your mind then that you was
going to shoot this man Hunter? A. No. I had in
my mind that I would go down and draw his fire.

"Q. Had you made up your mind that you was
going to kill him, or try to shoot him? A. No, sir, I
had not thought of it.

"Q. What did you get the gun for? A. To pro-
tect my life in case he tried to carry out his threat.

"Q. Why did you go down after he threatened
to kill you, if you went down? Why didn't you stay
upstairs? A. Why didn't I stay upstairs?

"Q. Yes. A. I was looking for more rocks,
when one was thrown. Do you think if I was in dan-
ger of my life—my children were more to me than my
life—."

The trial court over the objection of the defendant
appointed Aug. Walz, Jr., a member of the bar, to rep-
resent defendant in the trial. The defendant was given
every privilege he claimed in the examination of wit-
nesses, in the argument of the case and in all other
respects. Mr. Walz and the court were extremely con-
siderate of the defendant in every way. He addressed
the jury in an argument in his own behalf, and he tes-
tified as a witness. Mr. Walz has, at his own expense,
filed a brief herein on behalf of the defendant.

The defendant admitted doing the killing. In-
structions were given on murder in the first and sec-

ond degrees, but not on manslaughter in the fourth degree.

The fourth, fifth and sixth instructions were as follows:

"4. The defendant admits the shooting and wounding, but claims that he acted in self-defense. Upon this question the court instructs you that if you find from the evidence that when defendant shot and wounded said Hunter he had reasonable cause to believe, and did believe, that said Hunter was about to take his life or do him some great personal injury; and further; that he had reasonable cause to believe, and did believe, that it was necessary for him to shoot and wound said Hunter in order to protect himself from such danger, then he ought to be acquitted on the ground of self-defense. Whether defendant had reasonable grounds to believe that such danger existed, and whether he shot and wounded said Hunter in the honest belief that it was necessary for the protection of his life or person, are questions which you must determine from all the evidence in the case. If you believe from the evidence that the defendant shot and wounded the deceased Hunter unnecessarily, and when he did not have reasonable cause to believe that the said Hunter was then about to kill him or do him great bodily harm or personal injury, then there is no self-defense in the case, and you cannot acquit the defendant on that ground.

"5. In determining whether the defendant was justified in acting upon appearances and shooting the deceased, you may take into consideration any threats that may have been made by deceased against the life of the defendant and communicated to defendant prior to the killing, if you find from the evidence that any such threats were made and communicated. You should consider all the threats which you may believe from the evidence were made by the deceased against the defendant, and may give them such weight in de-

termining the nature of the transaction giving rise to the charge for which the defendant is now on trial as you deem proper. Mere threats, however, will not justify on the ground of self-defense the shooting of one by another, nor will threats alone warrant the party against whom they are made in attacking and killing the party who made them.

"6. Threats of deceased towards defendant (if you believe and find from the evidence that such threats were made), were admitted solely for the purpose of showing the attitude of said deceased towards defendant, and you are instructed that you cannot consider such threats (if you believe from the evidence that they were made) for any other purpose."

The defendant asked the following instruction which was refused:

"The court instructs the jury that if you find and believe from the evidence that the defendant was not justified in the killing of Hunter, and if you further find and believe from the evidence and from the demeanor of the defendant that he was of unsound mind when the shooting was committed and that he is of unsound mind this day you must acquit."

I. There was no error committed in the admission of the evidence as to the arrest of the defendant under the charge of attempted arson, which charge was made by Hunter. It was competent to show a motive on the part of defendant for killing Hunter. [1 Bishop's Crim. Proc., secs. 1124 and 1126.] It tended to show a motive of revenge.

II. There was evidence from which the jury could draw the conclusion that the killing was done wilfully, deliberately, premeditatedly and of malice aforethought, and the question of defendant's guilt of murder in the first degree was properly submitted to the jury.

III.  "In order to reduce the offense from murder to manslaughter, the killing must be done in the heat of passion on a reasonable provocation without malice and without premeditation, and under circumstances that will not be justifiable or excusable homicide." [State v. Weakley, 178 Mo. 1. c. 423.]

It will not do, in light of the defendant's own testimony, to say that the killing was done "in the heat of passion." There was no error in failing to give an instruction on manslaughter in the fourth degree.

IV.  The instructions on the subject of self-defense were sufficient and proper. Appellant insists that the jury should have been told "that the defendant had the right to act upon appearances, though it might thereafter turn out that the appearances were false." That idea is certainly embodied in the instructions given.

The jury were told that defendant had the right to act upon appearances. We must suppose that the jury understood ordinary language, and that they understood the instruction to cover false as well as true appearances. The court would, no doubt, have given the additional instruction had the defendant in any way called its attention to it. That was not done, and we hold the instruction sufficient.

In State v. Eaton, 75 Mo. 1. c. 591, the jury were instructed:  "If defendant had reasonable cause to apprehend a design on the part of deceased to do him some great personal injury, and there was reasonable cause to apprehend immediate danger of such design being accomplished, without the fault of defendant, they should acquit him."

The defendant in that case asked an instruction to the same effect, with the addition "then the defendant had the right to act upon appearances, and even kill Hatter if necessary to avoid the apprehended

danger, and such killing was justifiable, although it might afterward turn out that the appearance was false, and there was, in fact, neither design on the part of Hatter to do him serious injury, nor danger that it would be done.'' It was held reversible error to refuse that offered instruction.

The case of State v. Hollingsworth was similar and the same conclusion was reached. In both those cases the given instructions fell far short of the instruction in this case; and in both of them the additional instruction was requested. Moreover, the instruction in this case on self-defense being correct as far as it went, if it did not go far enough, it was necessary that the court's attention should have been called to the omission in the motion for a new trial. [State v. Conway, 241 Mo. 271.]

V. , Complaint is made by appellant that the fifth instruction limits the jury to the consideration of communicated threats in determining whether the defendant was justified in acting on appearances. Such is the law, and the instruction was correct. [State v. Edwards, 203 Mo. 1. c. 546; State v. Birks, 199 Mo. 1. c. 276.]

It was held in State v. Barrett, 240 Mo. 161, that the violent disposition of deceased must have been known to the defendant in order to justify an instruction that the jury should consider the evidence as to such violent disposition in determining whether there were reasonable grounds of apprehension of danger.

Moreover, a careful examination of the record shows that there was no evidence of any threats except those that were made to or in the presence and hearing of the defendant.

VI. Section 5164, Revised Statutes 1909, requires the court to appoint counsel to conduct the defense if the defendant be without counsel and unable to em-

ploy any and shall request such appointment. Nothing is said in that statute on the subject of the appointment of counsel by the court when the defendant objects to such appointment.

Mr. Walz, as such counsel, in this court insists that such appointment was reversible error. No authority for such position is called to our attention. We have clearly examined the record to see whether any harm has befallen the defendant by reason of anything done by Mr. Walz in the trial. We are satisfied that nothing indiscreet or harmful was done by Mr. Walz, and that the case of the defendant was benefited and not injured by his participation in the trial.

VII. We cannot find in the record any foundation for the claim that the defendant was insane at any time. If there had been anything in the appearance or demeanor of the defendant which the trial judge could observe to indicate insanity, we have a right to presume it would have been noticed by the court. The refusal of such an instruction furnishes the presumption that nothing was observed indicating insanity, and the refusal was proper.

The judgment is affirmed. *Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All the judges concur.