THE STATE v. LARRY B. SUDDUTH, Appellant.—55 S. W. (2d) 962.

Division Two, December 14, 1932.

*Edgar J. Keating* for appellant.

*Stratton Shartel,* Attorney-General, and *Don Purteet,* Assistant Attorney-General, for respondent.

FITZSIMMONS, C.—Appellant was tried in the Circuit Court of Jackson County upon an indictment charging murder in the first degree. He was found guilty of murder in the second degree and his punishment was assessed at forty-five years in the penitentiary. His motion for a new trial having been overruled and sentence and judgment having been imposed, he appealed. He rests his appeal upon the admission of certain testimony and the giving of an instruction. The person killed was Haver Jenkins whom ap-

pellant stabbed to death with a butcher knife on September 25, 1930, in front of the premises at 1411 Euclid Avenue, Kansas City, Missouri. Anna Jenkins had been the wife of Haver Jenkins, but she obtained a divorce from him in 1925 and went to Los Angeles, California. Appellant, Sudduth, whom Anna had known for some years, soon after arrived in California, and there the two lived together for three years as husband and wife, although they were never legally married. Anna Jenkins then left California and went to the home of her mother in Wichita, Kansas. Appellant, Sudduth, followed her from California and he and she thereafter lived together in Topeka, Kansas, until about the middle of September, 1930, when she left him and moved to Kansas City, Missouri.

The deceased Haver Jenkins and Anna, his former wife, owned in common the premises at 1411 Euclid Avenue, Kansas City, until about a year before the death of Jenkins, when Jenkins deeded his interest in the property to Anna. About 9:30 or 10 A. M., on September 25, 1930, the day of the killing, Haver and Anna Jenkins went to 1411 Euclid Avenue, and on the porch there they met William Williams, a paper hanger, with whom they had an appointment to confer about decorating the house. The Jenkinses and Williams were about to enter the house when appellant came upon the porch from the side yard, seized the woman by the wrist and said: "All right, Anna, come on, I have got you." She held back and pleaded with appellant to listen to her. Jenkins protested, and appellant for answer, drew a butcher knife, cast Mrs. Jenkins to one side. and advanced upon Jenkins who retreated towards his automobile which was standing in front of the house. Anna Jenkins ran toward the automobile and attempted to enter it. But appellant pursued her with the knife and she sprang upon the hood of the car. Appellant flung her to the ground and cut her on the arm and neck several times with the knife. The deceased, Haver Jenkins, then came around his automobile toward appellant, and threatened to call the police. At that, appellant rushed upon the deceased with his knife uplifted. Jenkins attempted to ward off the blows with a lug wrench which he had picked up from his automobile. After a few moments of conflict during which Jenkins backed off before Sudduth's knife, Jenkins stumbled, and Sudduth closed in and stabbed him. Jenkins fell dead with wounds in the left chest penetrating the aortic arch and causing death, and also in the back of the neck, in the small of the back and on the right arm. The deputy coroner who viewed Jenkins' body within half an hour after death testified to the number and nature of these wounds. Appellant next turned upon the woman, Anna Jenkins, with his knife held in his hand above

his head and rushed toward her as if he were about to stab her. But the blade of the knife had been broken off in the body of Haver Jenkins, and appellant struck the woman repeatedly with what was left of the knife threatening all the while to kill her unless she would go with him. She appealed to him not to kill her, saying that she would accompany him, and he dragged her down the street to a taxicab in which appellant and Anna Jenkins rode to Lawrence, Kansas. Sudduth requested the taxi driver to take them to Topeka, but the driver refused to go further than Lawrence. On the way, appellant gloated over the fact that he had intended to kill Jenkins and had stabbed him through the heart.

During the night that appellant and Anna Jenkins stayed in Lawrence, appellant informed her that on the morning of the tragedy he had gone to her property on Euclid Avenue to see her and was there when Jenkins alone came to the house and asked for the paper hanger; that Mrs. Brady, the tenant of the house informed Jenkins that the paper hanger would not return until 9:30 or 10 o'clock and that, after Jenkins departed with the intention of returning at the later hour, appellant went into Mrs. Brady's kitchen, got a butcher knife, went around between the houses and waited for the deceased and Anna to return. Mr. Williams, the paper hanger, testified that he made two visits to the house on Euclid Avenue on the morning of the tragedy; that neither Haver Jenkins nor Anna Jenkins were there upon his first visit and that he departed with the promise to return at a later hour, and that while he, Williams, was at the premises this first time he saw appellant there. There is testimony tending to show that appellant made arrangements with the taxicab driver to come to 1411 Euclid Avenue between 9:30 and 10 o'clock on the morning of the tragedy; that the taxicab made one trip to the front of the premises; but appellant told the driver he was not ready for him and to return later. Police identified the broken blade and the handle of the butcher knife, found near the dead body of Jenkins. On the part of the State the tragic story was akin to the barbarous forays of other days for the stealing of women, but with automobiles substituted for steeds and city streets and state boundaries for wild borders.

Appellant relied upon self-defense for his acquittal. He testified he was in the house when Jenkins and Anna drove up; that he saw Anna open a pocket book and look in a mirror to powder her face when she was walking toward the house; that he saw an automatic pistol in the pocket book; that he came out of the house and greeted Anna pleasantly; that she handed the pocket book to Jenkins and called to him to kill appellant; that Jenkins could not open the pocket book, but that he got a wrench from the auto-

mobile and struck appellant with it; that Jenkins. also. cut him with a pocket knife; that appellant defended himself by striking Jenkins with a broom handle. Appellant further. testified that in the struggle he seized the knife which Jenkins had used on him and that he struck Jenkins once with the knife in the breast. He denied that he cut Jenkins in the back.

The testimony which appellant urges was prejudicial was that of Bush Wells, a rebuttal witness for the State. Anna Jenkins, testifying for the State, said when she left Sudduth in Topeka, Kansas, in September, 1930, she stopped for a time with a family named Green on Woodland Avenue, in Kansas City, Missouri. Appellant, testifying in his own behalf, said that he went from Topeka, Kansas to Kansas City, Missouri, on the morning of September 25, 1930, the day of the killing, at the request of Anna Jenkins who had telephoned and written to him to keep an appointment with her. On cross-examination he was asked if it was not a fact that he had no appointment with her, but that he had been about Kansas City looking for her and trying to take her back to Topeka. He answered "No" to these questions. The State then inquired whether he, appellant, had asked Bush Wells to go to the Green home, represented himself as a policeman and take Anna Jenkins to a room where appellant would get her and take her back to Topeka. Appellant refused to answer the question, but after a general objection had been overruled, he stated that he asked Wells to serve Anna with a subpoena to appear in a law suit in Topeka. Wells, called as a State witness in rebuttal, answered in the affirmative a question in substance the same as the question which appellant had declined to answer. He placed the time as September 18, 1930, a week before Jenkins was killed. The objection to the testimony of Bush made at the trial was that no proper foundation had been laid. The motion for a new trial assigns as error, without specifying a reason, the admission of Bush's testimony. Appellant argues here that the testimony of Bush violates the general rule that evidence to show that a defendant had committed or attempted to commit another crime besides the one charged in the indictment is inadmissible. We make no point that this specific objection is raised here for the first time, but we observe that one of the authorities cited by appellant (State v. Tunnell (Mo.), 296 S. W.. 423, l. c. 427), states this exception to the general rule: "Relevant facts and circumstances which tend to establish any of the constitutive elements of the crime of which the defendant is accused in the case on trial, even though such facts and circumstances tend to prove the defendant has committed other crimes, are admissible. [8 R. C. L. 199.]"

Appellant was on trial for murder in the first degree, of which

deliberation was an essential element. According to the State's case, he went to Anna Jenkins' Euclid Avenue house on the morning of September 25, 1930, to take her back forcibly to Topeka. He learned that she was to come at a later hour with her former husband, Haver Jenkins. Appellant then armed himself with a butcher knife. He lay in wait beside the house and he seized the woman when she arrived. He said to her: "All right, Anna, come on. I have got you." According to his own story, Anna had placed appellant's trunk and personal belongings on the third floor of the Euclid Avenue house, and she had invited him to come there that day so that they could live together in her property as husband and wife. He had no intention of kidnaping her to Kansas. and when she approached the house, he walked out the front door and greeted her: "Hello baby, Good morning." He testified that she then incited Jenkins to shoot him, and that Jenkins drew a knife when he could not open her pocket book in which, appellant testified, he had seen a pistol. In these circumstances it was proper for the State to show, in a trial for murder in the first degree, that for a week before, appellant had the fixed motive to get the woman back to Topeka by artifice and force, if necessary, even though that would have been another crime. [State v. Hawley (Mo.), 51 S. W. (2d) 77.]

II. Appellant assigns as error the self-defense Instruction 6. Its first paragraph is as follows: "The court instructs the jury that if you find and believe from the evidence that the defendant. Larry B. Sudduth, at the time he stabbed Haver Jenkins (if you find he did stab Haver Jenkins), defendant apprehended and had reasonable cause to apprehend that the said Haver Jenkins was about to kill defendant or do him some great bodily injury, then he had the right to stab in his own defense."

The instruction further told the jury that if it found and believed from the evidence that appellant did not have reasonable. cause to apprehend that Jenkins was about to kill him or to do him great bodily harm, the stabbing was not justifiable. Appellant complains that the instruction is prejudicial because it did not advise the jury that the right of self-defense gave appellant the right to kill Jenkins. as well as to stab. In our opinion, this objection is without merit. The testimony shows clearly that appellant stabbed Jenkins four times with a butcher knife, that the blade was broken by one of the thrusts, and that one of the wounds above the heart caused almost instant death. To assume that the jurors in this case understood that the right to stab did not include the right to kill "is to conclude that they lacked average intelligence and were therefore incompetent to sit as triers of the facts." See State v. Rozell (Mo.), 279 S. W. 705, where this comment was made

on a hypercriticism of a self-defense instruction. An additional instruction on self-defense should have been requested, if appellant believed that the given instruction did not go far enough. [State v. Rozell, supra.] A like instruction was given in State v. Harris, 209 Mo. 423, 108 S. W. 28. The essence of self-defense is the lawful right of a defendant to do the act which has brought him before the bar of justice, whether that act be the killing of another for which he is charged with murder or a felonious wounding from which death has not ensued. When therefore an instruction on self-defense makes mention of the cutting, shooting or clubbing which has caused death in a given case, and when that instruction contains all the other approved elements (as here) that instruction is not prejudicial. [State v. Hudspeth, 159 Mo. 178, 60 S. W. 136.]

Reversible error not appearing, the judgment is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.