STATE v. JAMES G. EATON, Appellant.—No. 39775.—195 S. W. (2d) 457.

Division One, June 10, 1946.

Rehearing Denied, July 8, 1946.

*J. V. Gaddy* and *Waldo P. Goff* for appellant.

*J. E. Taylor*, Attorney General, and *J. Martin Anderson*, Assistant Attorney General, for respondent.

HYDE, P. J.—Defendant was found guilty of murder in the second degree and sentenced to eighteen years in the penitentiary. On his appeal defendant raises only two points: The introduction in evidence and exhibition to the jury of an army overcoat worn by the deceased, William Van Ross, at the time he was shot by defendant; and the giving of Instruction No. 7 covering self-defense.

Defendant and Harold Simmonds had an argument with Andrew Hawkins, a colored man, at the Harlem Club in St. Joseph, during which Hawkins drew a gun on Simmonds. After visiting other places and taking several drinks of whiskey, they went back. According to the State's evidence, Simmonds said: "I am looking for that nigger Hawkins . . . him or any other nigger"; and defendant said: "yes, we came after a nigger". (Another witness testified that Simmonds said: "We came to kill him . . . If we can't find him any nigger will do"; and that defendant said: "that is right".) Deceased, a discharged negro veteran still in uniform, was at the tavern bar. He said: "I can't stand that; you don't want to use them words in here"; and ran over, grabbed Simmonds as he was putting his hand in his pocket, and pinned his arms down by his side. Deceased was facing Simmonds with his back toward defendant who was about eight feet away. (One witness said 15 or 20 feet.) Defendant drew a pistol and shot several times. The first shots went into the wall but two bullets went into deceased's back. The State's witnesses saw no weapon of any kind in deceased's hand and there is no evidence that any was found after he was killed. One witness said that defendant told deceased to turn Simmonds loose and said: "If you don't turn him loose I am going to shoot you".

After the eyewitnesses to the shooting testified, the State offered in evidence the overcoat worn at the time by deceased. The following occurred:

"Judge Gaddy: The Prosecuting Attorney is now exhibiting a soldier's overcoat with blood on it in the presence of the jury. It can be offered for no other purpose than that of prejudicing the jury in this case, and is inadmissible for any purpose, and the exhibiting of the coat in court is for the purpose of inflaming the minds of the jury and for that purpose only.

"Mr. Sherman: I am not necessarily exhibiting it to the jury. I am offering it for the purpose of identification and the coat will be substantial evidence to verify previous evidence that the bullets went through this coat in the back of the deceased.

"The Court: The objection will be overruled." (Exception saved.)

The coat was received in evidence over the same objection, after being identified by the undertaker who removed deceased's body from the tavern. The undertaker said that the holes in the overcoat were in line with fresh wounds which he found in deceased's back. Thereafter, two physicians also testified about the location of these wounds.

Defendant's evidence (defendant and Simmonds) was that deceased struck at defendant with a knife; that defendant slid down the bar away from him; that deceased was about to strike again when Simmonds seized his right hand with his left; that Simmonds put his right hand in his pocket to get his knife and deceased grabbed his right hand holding it in his pocket. While they were thus holding each other and Simmonds was yelling and screaming, defendant shot to scare deceased and cause him to let go of Simmonds, but that when he would not do so he shot him. Defendant was crippled and walked with a cane. He said he thought he had no chance if deceased got the best of Simmonds, and "was scared to death, afraid he was going to cut my head off or something." Simmonds made a statement to the police on the day of the shooting in which he said he did not know that deceased had a knife and that he did not see anything in his hand. However, at the trial Simmonds explained this statement by saying that he made it while under the influence of liquor and did not know what he said.

Defendant relies on State v. Long, 336 Mo. 630, 80 S. W. (2d) 154, in which we held it improper to exhibit clothing to the jury, saying: "The bloody clothing worn by the deceased could not in any manner have aided the jury in arriving at a verdict. They would not tend to connect the accused with the crime, prove the identity of the deceased, or show the nature of the wound." However, in that case there was no issue of self-defense and defendant denied that he inflicted the wounds from which deceased therein died. In that case, the state relied upon circumstantial evidence to prove that defendant therein committed the murder and this court held it insufficient. In this case, the location of the bullet holes in the overcoat tended to corroborate the state's witnesses to the effect that deceased was not attacking defendant and thus was relevant upon the issue of self-defense. [State v. Lewis (Mo. Sup.), 137 S. W. (2d) 465; State v. Shawley, 334 Mo. 352, 67 S. W. (2d) 74 and cases cited.] Defendant's contention was that everything, which the state claimed about the wounds and deceased's position at the time he was shot, had been admitted as in the Long case. However, defendant was asked on cross-examination about deceased's position and "where was he

facing?'' He answered: ''I don't know. I am sliding on that bar and reaching for that gun and shooting and thinking. The whole thing is in a whirl to me. I don't want to get cut.'' (Likewise: ''Q. You were about six feet away from this man when you shot him, wasn't you, Jim? A. Yes. Q. And his back was towards you A. I don't know. I am going to tell you the truth, I don't know. Q. Well, did you shoot him in the back? A. I don't know, I shot at him.'') We, therefore, hold that the court's ruling was correct on the admission of the overcoat in evidence.

 Instruction No. 7 was as follows: ''The court instructs the jury that the defendant has interposed as a defense what is known in law as the right of self-defense.

''Upon this question the court instructs you that if at the time the defendant shot the deceased he had reasonable cause to apprehend upon the part of deceased a design to do him some great personal injury, and that there was reasonable cause for him to apprehend immediate danger of such design being accomplished and to avert such apprehended danger he shot deceased, and that at the time he did so he had a reasonable cause to believe and did believe it necessary to use said pistol in the way he did to protect himself from such apprehended danger, then and in that event the shooting was not felonious, but was justifiable, and you should acquit him upon the ground of necessary self-defense.

''It is not necessary to this defense that the danger should be actual or real, or that the danger should have been impending and immediately about to fall. All that is necessary is that defendant had reasonable cause to believe, and did believe, these facts.

''But before you acquit on the ground of self-defense you ought to be satisfied that defendant's cause of fear for his life or personal safety was reasonable. Whether the facts constituting such reasonable cause have been established by the evidence you are to determine, and unless the facts constituting such reasonable cause have been established by the evidence in this case, you cannot acquit the defendant on the ground of self-defense, even though you may believe the defendant thought he was in danger.

''Therefore, the court instructs you that if you find and believe from the evidence that the defendant shot and killed the said William Van Ross unnecessarily, and when he did not have reasonable cause to believe that the said William Van Ross intended to kill him or do him some great bodily injury, then there is no self-defense in the case and you cannot acquit him on that ground.''

Defendant contends that ''the last two paragraphs of this instruction took from the defendant the right to act on appearances and permitted the jury to say, many months after the controversy was over, whether the defendant had *actual* reason to believe that he was in danger at the time of the shooting.'' Defendant makes no more

specific criticism of the next to the last paragraph but complains of the use of the word "unnecessarily" in the last paragraph and says that this makes the last paragraph conflict with prior correct paragraphs, citing State v. Banks, 258 Mo. 479, l. c. 492, 167 S. W. 505. However, we have approved the use of this term, with the qualification thereof used herein, in two recent cases: State v. O'Leary (Mo. Sup.), 44 S. W. (2d) 50 and State v. Traylor, 339 Mo. 943, 98 S. W. (2d )628; See also State v. Greaves, 243 Mo. 540, 147 S. W. 973.

It will be noted that the instructions in the Greaves, O'Leary and Traylor cases, as did this one, required the finding in the conjunctive that defendant shot deceased "unnecessarily *and* when he did not have reasonable cause to believe that the said (named deceased) intended to kill him or do him great bodily harm". As pointed out in the two latter cases, the instruction in the Banks case did not contain this qualification of "reasonable cause to believe". Moreover, Instruction No. 7 herein in its preceding paragraphs also used the word "necessary" in connection with the requirement that defendant must have had reasonable cause to believe he was in danger. Since the matter of necessary action was combined throughout the instruction with this idea of reasonable cause to believe that danger existed, we do not see how the jury could have misunderstood it. Considering the instruction as a whole, we find no conflict in it . We, therefore, hold that there was no prejudicial error in this case.

The judgment is affirmed. All concur.