STATE of Missouri, Respondent,

v.

Chalmer O. DEMAREE, Appellant.

No. 48650.

Supreme Court of Missouri,

En Banc.

Nov. 14, 1962.

Rehearing Denied Dec. 11, 1962.

ing in front of the chair in which she had been sitting holding a pistol in both hands. As he turned she said, " 'That will be the last present you ever bring up here for those children. * * * Damn you, I am going to kill you.' " Demaree says that he "wasn't really scared" so he held his hands up and said, "Sit down. Can't we talk this over," but Mrs. Demaree "started firing." To "protect my life," he jumped up, took his 38-caliber revolver from his belt and "started firing right back." He does not know how many shots he fired but he stopped firing when she fell. The fact was that three bullets struck Mrs. Demaree, one in the left temple, one behind the right ear and one entered her right chest below the clavicle and coursed downward to her lower rib. There was also a bullet hole in the wall above the overstuffed chair. And there were two 32-caliber bullet holes in the south wall about 48 inches above the floor and it was the appellant's position that these were the shots fired by Mrs. Demaree. The state would have the inference drawn, however, that the appellant also brought the untraceable 32-caliber pistol along (the serial numbers had been destroyed) and himself fired the two shots into the south wall after he killed his wife. The state would also draw the inference from the chest wound and the bullet in the west wall that Demaree fired the first shots as his wife sat in the overstuffed chair and the other two shots into her head after she had fallen to the floor. In these circumstances the appellant of necessity admits that he shot and killed his wife but claims that he did so in self-defense and that he is entitled to a new trial because of the manner in which the court submitted his defense of justifiable homicide.

In the trial of this case there were the usual formal, defining instructions, and there were principal instructions on first and second degree murder and manslaughter. In addition, there was an instruction on "previous good character" and instruction number 10 on self-defense. It is urged that this instruction is erroneous in several respects and that because of its errors the

Morris A. Shenker, Bernard J. Mellman, St. Louis, Joe Welborn, Bloomfield, Harry C. Blanton, Sikeston, for appellant.

Thomas F. Eagleton, Atty. Gen., Ike Skelton, Jr., Sp. Asst. Atty. Gen., Jefferson City, for respondent.

BARRETT, Commissioner.

A jury has found that in killing his estranged wife Chalmer Demaree was guilty of murder in the second degree. The sufficiency of the evidence to support the finding of second degree murder is not challenged and, therefore, it is necessary to detail only those circumstances illustrative of the two theories of the killing.

Demaree says that as he sat in a rocking chair across the room from his wife he was suddenly aware of a slight commotion and when he turned around his wife was stand-

appellant is entitled to a new trial. The principal claim is that the instruction denied to the appellant "the right to act upon appearances." In the second sentence of the instruction the jury was told that if he "had reasonable cause to believe and did believe that said Christine Demaree was about to take his life or do him some great personal injury, and further, that he has reasonable cause to believe and did believe that *it was necessary for him to shoot and kill said Christine Demaree* in order to protect himself from such danger, then he ought to be acquitted on the ground of self-defense." It is pointed out that this phase of the charge does not refer to the right to act on appearances and fails to tell the jury "that even if no real danger existed" he nevertheless, if he believed danger existed, would be justified in acting on his belief and, thereby, the instruction failed to cover the "constituent elements of self-defense" and denied to the appellant the right to act on appearances. It is said that in employing the phrase "to shoot and kill" the instruction is erroneous because it narrowed and restricted his right of self-defense to the single hypothesis that it was necessary "to kill" in order to protect himself and thus there was excluded from the jury's consideration, in accordance with his testimony, "that he was merely trying to stop her from doing injury to him." In the last sentence the instruction told the jury that if it found and believed that the appellant shot and killed his wife "unnecessarily" and when he did not have reasonable cause to believe that she was then about to kill him or do him great bodily harm or injury *"then there is no defense in this case and you cannot acquit the Defendant on that ground."* It is urged that the quoted language "narrowed and restricted the defendant's theory of innocence and improperly prevented the jury's consideration of any other defense to the charge."

Considerable research has been expended in unearthing the origin of this instruction, but it is undoubtedly a rescript of instruction 4 in State v. Greaves, 243 Mo. 540, 548, 147 S.W. 973, 974. However, in that case instruction 4 was followed by instruction 5 upon the subject of whether the defendant "was justified in acting upon appearances." There it was urged that the jury should have been told that the appellant had a right to act on appearances "though it might thereafter turn out that the appearances were false." But the court held that "(the) idea is certainly embodied in the instructions given." Moreover, the court said that "The (trial) court would no doubt, have given the additional instruction had the defendant in any way called its attention to it." In this case instruction 10 was the only instruction on self-defense and, therefore, plainly could not conflict with any other instruction on that subject as was the fact in State v. Clough, 327 Mo. 700, 38 S.W.2d 36. These and other cases establish that a defendant charged with murder is entitled in self-defense to act on appearances, and, if the evidence justifies it, he is also entitled, if he requests it, to an instruction embodying that right in some form in a modifying instruction. State v. Traylor, 339 Mo. 943, 98 S.W.2d 628. Here there was no request for an additional or explanatory instruction on any phase of self-defense (State v. Eaton, 75 Mo. 586), and in State v. Traylor it was said that "even if no real danger existed, yet if defendant had reasonable ground to believe and did believe that it existed" was "substantially equivalent" to a direction that the defendant had the right to act on appearances. And in State v. Miller, 346 Mo. 846, 143 S.W.2d 241, "It is not necessary to this defense that the danger should have been real or actual, or that it should have been impending and immediately about to fall upon him" was also said to be the equivalent of the right to act on appearances. The self-defense instructions in those cases are not similar to instruction 10, nevertheless, it does say "whether the defendant had reasonable grounds to believe that such danger existed * * * you must determine from all the evidence in the case." And, in the absence of a request for further explanation, that language is also the equivalent of the right to act on appearances. The point to this phase of the discussion is that techni-

cally the instruction is not erroneous, it does not in terms take away or deny to the appellant the right to act on appearances.

Thus in its terms the instruction is not a misdirection and as a matter of law is not manifestly erroneous in defining self-defense. And, there is a further qualification applicable here,—"While it is unquestioned law, at least in this state, that one may act upon appearances, although they turn out to be baseless, the trial court is not required in every instance to affix that qualification to an instruction for self-defense, *but should only give it in a case when it would apply to (the) facts.* Here the court's instructions apply to every phase of the evidence, *and there was no appearance of any supposed danger, other than that on which the instructions are based."* State v. Smith, 125 Mo. 2, 8, 28 S.W. 181, 182.

And so it is here upon the facts, the only "appearance" is that testified to by the appellant and hypothesized in the instruction— that his wife suddenly and without cause produced a gun and "started firing" and therefore when he "started firing right back," he had "reasonable cause to believe and did believe that said Christine Demaree was about to take his life or to do him some great personal injury." There was no other circumstance for the appellant to apprehend or act upon, she, according to him, was suddenly firing a pistol, and it was not as if they had first engaged in mutual combat with their fists, or there had been a hidden knife (State v. Constitino, (Mo.) 181 S.W. 1155), and it was not as if he had had reason to apprehend "an attack by some other person or persons" as was the fact in State v. Lowe, (Mo.) 260 S.W.2d 729. In short, as the court said in the Smith case "there was no appearance of any supposed danger, other than that on which the instructions are based," and in these circumstances the appellant was not as a matter of either law or fact deprived of "the right to act upon appearances."

■ In the instructions in which it has been employed, the phrase "that it was

necessary for him to *shoot and kill,"* or similar language, has also had a rather curious history. In State v. Lewis, 248 Mo. 498, 154 S.W. 716, there was an affray at a country church and the deceased had struck the defendant with his fists before he was shot. A new trial was granted on other grounds, but the court suggested that upon another trial the language "to shoot *and kill* to protect himself from such apprehended danger" be changed to read "that it was necessary for him *to use his pistol in the way he did* to protect himself from such apprehended danger * * * *although such shooting resulted in the death of the said James Edsell."* (Italics by the court.) Four years later, in State v. Swearengin, 269 Mo. 177, 190 S.W. 268, the phrase "to shoot and kill" was again objected to and the court said "this complaint is more specious than real." The court called the suggestion in State v. Lewis "a circumlocution," and said that when a homicide is accomplished by the intentional use of a deadly weapon the defendant "ought not to be heard to bottom reversible error upon the employment by the trial court of a direct expression of the result of the use of such weapon rather than of its periphrastical equivalent." Then the court proceeded to recommend as a "little fairer" form the self-defense instruction set out in State v. Thomas, 78 Mo. 327, which on this point said "to use his knife in the way he did." Still later, in State v. Goodwin, 271 Mo. 73, 195 S.W. 725, there was a rough and tumble fist fight and the use of "pump handles" and the court said that both the Lewis and Swearengin cases had criticized the use of "to shoot and kill" even when a deadly weapon was employed. And in that case, because the jury could find that the defendant was neither afraid of being killed nor believed it necessary to kill, it was held that the instruction failed to give him the benefit of some purpose he might have entertained of disabling his antagonist without killing him and, therefore, he was entitled to a new trial. In State v. Sudduth, 331 Mo. 728, 55 S.W.2d 962, the instruction omitted the words "to kill" and said merely "at the time he stabbed

Haver Jenkins." It was objected, as no doubt it would have been objected here had the words been omitted, that the omission of "to kill" deprived the defendant of "the right to kill Jenkins, as well as to stab" him. But the court was of the opinion that the jury would understand that the right to stab with a knife in self-defense necessarily included the right to kill.

But here the specific objection is that the phrase "and to kill" restricted and narrowed his defense, and before he could be acquitted on that ground the jury "must find that the defendant found it necessary to shoot *and kill,*" when he was entitled to be acquitted if the jury found, as he claimed, that he did not shoot his wife "for the purpose of trying to kill her but that he was merely trying to stop her from doing injury to him." It is true that the appellant said that he loved his wife and did not intend to kill her, but the fact remains that he came armed with a 38-caliber revolver, that he fired four times and three of the bullets struck her head and chest and the admitted fact was that he did "shoot and kill" her. And again in these circumstances, in the absence of a request or an offer of explanatory or qualifying instructions, it is not apparent that the instruction unfairly narrowed or restricted his right of self-defense and is, therefore, reversibly erroneous.

■ And likewise, in various forms of self-defense instructions, the clause that if the defendant "shot and killed the deceased, * * * unnecessarily, * * * then there is no defense in this case and you cannot acquit on that ground," has had a checkered career. In State v. Banks, 258 Mo. 479, 167 S.W. 505, it was held that this language in an instruction was erroneous in that it too deprived the defendant of the right to act on appearances and thereby virtually destroyed the right of self-defense. But that is not the objection made to this particular language in the instruction, and in the Banks case there were other instructions on self-defense and this particular phrase "nullified the other portions of said instructions." Furthermore, in this case, the phrase as quoted above does not stand alone, where the asterisks appear and following the word "unnecessarily" there is the further phrase *"and,* when he did not have reasonable cause to believe that said Christine Demaree was then about to kill him or do him great bodily harm or personal injury, then there is no defense in this case * * *." In State v. O'Leary, (Mo.) 44 S.W.2d 50, 54, it was said that the latter quotation qualified the word "unnecessarily" and therefore "The instruction only denies defendant the right of self-defense if he shot unnecessarily and also without reasonable cause to believe it was necessary," and so was not erroneous. And in State v. Eaton, 355 Mo. 164, 195 S.W.2d 457, it is said that the word "unnecessarily" was qualified by *"and* when he did not have reasonable cause to believe" and therefore did not erroneously deprive the defendant of the right to act on appearances.

Here the objection is not that he was deprived of the right to act on appearances, the specific objection is that this particular language "precluded the jury from finding the defendant not guilty under any other possible theory of innocence." It is said that under the principal instructions, murder and manslaughter, the jury may have believed that the appellant was not guilty by reason of some other failure of proof on the part of the state, such as that "the deceased did not die by reason of the wounds inflicted upon her by the defendant or that the killing of the deceased was accidental, or that there was some other defect in the state's case." True enough the jury by a general verdict might have found the defendant not guilty for a variety of reasons, but since the shooting and killing are admitted, it is not apparent that there were any other defenses or any other "theory of innocence." There is no evidence of accidental shooting and admittedly Mrs. Demaree died because the appellant shot her. And the second degree murder instruction required the jury to find that the appellant

shot Christine "then and there and inflicting upon the said Christine Demaree a mortal wound and from said mortal wound, if any, the said Christine Demaree did upon the same day die * * *." If the appellant thought that there were any other theories of innocence other than justifiable homicide by reason of self-defense the fact was not called to the court's attention and there was no offer of a qualifying instruction, and the instruction, correct as far as it went, was not reversibly erroneous for the reason now advanced.

While, in the circumstances of this case, this particular instruction is not demonstrably prejudicial for the reasons advanced, there should be a caveat, as all the cases indicate, that it is not recommended for general use. This belaboured effort, in considering that which should in fact be a comparatively simple matter, is sufficient to indicate that something is amiss. There is of course no formula applicable to all self-defense situations, but a generally acceptable instruction fairly submitting self-defense and at the same time obviating these and similar commonly urged objections is indeed a possibility in the hands of a thoughtful craftsman.

■ In connection with the self-defense instruction, the appellant has also briefed and argued the point that the court erred in giving instructions 8 and 9, murder in the second degree and manslaughter, and several reasons are advanced as demonstrating that these errors entitle him to a new trial. The reasons set forth in the brief, however, are much broader than the motion for a new trial and are not open questions in this court. State v. Davis, (Mo.) 251 S.W.2d 610. In his motion for a new trial the objection was that these instructions conflicted with instruction 10 and were erroneous in that they did not advise the jury that if he acted in self-defense he would not be guilty of either murder or manslaughter. In support of his claim the appellant has cited a line of cases in which it has been established that in

felonious assault a principal instruction must directly exclude self-defense. The reason usually given is that "An instruction which purports to cover the whole case and entirely ignores a defense (as self-defense) supported by evidence is erroneous and constitutes reversible error." State v. Winn, (Mo.) 324 S.W.2d 637, 642, and the cases there reviewed. But the rationale of those cases is not applicable to second degree murder, malice aforethought is an essential ingredient of second degree murder and necessarily excludes and is inconsistent with the very idea of self-defense. "It is therefore not error to fail to refer to self-defense in an instruction on murder in the second degree." State v. Lewis, 248 Mo., l. c. 505, 154 S.W., l. c. 719. Instruction 9 defined manslaughter as "the killing of a human being not herein declared to be murder or excusable or justifiable homicide," and then "justifiable homicide" was defined and there was also the separate instruction on self-defense, hence the manslaughter instruction was not erroneous in failing to further exclude self-defense. State v. Gore, 292 Mo. 173, 186, 237 S.W. 993, 996.

■ The defendant produced four witnesses who testified to his good reputation as a peaceable, law-abiding citizen. After the fourth witness had testified the court announced that further character witnesses would not be permitted, that there was a court rule limiting such proof to three witnesses. The defendant then made an offer of proof and proposed to call six additional witnesses, announcing that it would not take more than five minutes with each witness. At this juncture the prosecuting attorney announced that further character testimony was cumulative and repetitious, and for that reason the court sustained the objection. It is now urged that the court erred in thus limiting the number of witnesses to the appellant's good character because the evidence was vital in a "capital case on the issues of whether the defendant or the deceased was the aggressor, and whether the defendant under the circum-

stances had reasonable cause to shoot at the deceased."

The good or bad reputation of *a witness* is a collateral issue and the trial court has a wide discretion in limiting the number of witnesses on that issue. State v. Miles, 253 Mo. 427, 161 S.W. 766. But here the witnesses were not testifying to the reputation of an ordinary witness, they were testifying to the "good character" (V.A.M.S. Sec. 546.070(4)) of *the defendant* for a specific trait to show the improbability of his committing the crime charged and in substantive proof of his innocence (22A C.J.S. Criminal Law § 676, pp. 699–700; annotations 10 A.L.R. 8, 68 A.L.R. 1068), and any court rule limiting the number of witnesses should be accordingly modified and administered. 23 C.J.S., Criminal Law § 1042, pp. 1178–1179. Even so, the problem here is whether there has been an intrusion on the substantial right to a fair trial.

In the trial of this case the state did not vigorously cross-examine the defendant's character witnesses, any questions were perfunctory, and one witness was asked whether he was a friend of the defendant. The state did not offer any witnesses to the appellant's bad reputation and thus there was no unfair advantage to the state (St. Louis, Memphis & S. E. Ry. Co. v. Aubuchon, 199 Mo. 352, 97 S.W. 867, 9 L.R.A., N.S., 426), and there was no problem of a denial of rebuttal testimony. Markham v. Herrick, 82 Mo.App. 327. The fact of the matter was, as a separate issue, there was no question as to the defendant's previous reputation or good character, it was all but conceded and it may not be said that there was such manifest abuse of discretion as to demand the granting of a new trial. State v. Ring, 346 Mo. 290, 304, 141 S.W.2d 57, 64; State v. Emma, 324 Mo. 1216, 26 S.W.2d 781.

■ And in this connection, since there was evidence of good character, the court was required to (S.Ct.Rule 26.02, V.A.M.R.) and did instruct the jury, "if proven to your satisfaction," that the appellant's previous good character "ought to be considered by you, in passing upon his guilt or innocence." It is now objected that the language "if proven to your satisfaction" unduly restricted and limited "the right of the jury to consider evidence of good character and improperly required the defendant to establish that fact to the satisfaction of the jury and erroneously placed upon the defendant the burden of showing such fact." It is not known, of course, why this particular form of good character instruction with the unfortunate phrase "if proven to your satisfaction" was given. It was undoubtedly copied from a text which in turn extracted it from a series of instructions set out in State v. Brooks, 92 Mo. 542, 556, 5 S.W. 257, 262, 330, in which it was neither attacked nor approved nor disapproved. In any event, it is not recommended and future draftsmen would be well-advised to take into consideration cases decided since 1887 and particularly the definitive study of good character instructions in 10 A.L.R. 8. It is possible that it is subject to the construction the appellant attributes to it and is therefore technically erroneous, but it does not follow that it is manifestly prejudicial and demands the granting of a new trial.

■ There is in fact no direct limitation upon the jury's considering the defendant's good character, and that upon the substantive fact of guilt or innocence. And, important as the subject of good character is, it is not as if the burden of proof upon guilt or innocence of the substantive offense had been misplaced (State v. Strawther, 342 Mo. 618, 116 S.W.2d 133), or as if there had been a misdirection as to the burden of proof as to self-defense (State v. Malone, 327 Mo. 1217, 39 S.W.2d 786; State v. Robinson, (Mo.) 255 S.W.2d 798), and neither is it as if the instruction had misdirected the jury as to the burden of proof on insanity. State v. Swinburne, (Mo.) 324 S.W.2d 746. Good character is a substantive fact to be considered upon guilt or innocence, but it is not a defense to the crime,—it is but a circumstance the jury is to consider in determining the ultimate issue. As indicated, in

this case, fortunately, the appellant's prior good character was not a contested issue, it was all but conceded and it would be most unrealistic to say that this isolated phrase, "if proven to your satisfaction," confused, misled or misdirected the jury in any manner and thereby infringed the appellant's right to a proper statement of the law or to a fair trial. While they too are not recommended, it has been said that somewhat similar language in good character instructions, "if established" or "you are satisfied beyond a reasonable doubt," was not reversible error. State v. Nienaber, 347 Mo. 541, 148 S.W.2d 537; State v. Lasson, 292 Mo. 155, 238 S.W. 101. In short, upon this record and its particular circumstances, the appellant is not entitled to a new trial for the reasons presently advanced against instruction 11.

Furthermore, there is no error with respect to those matters the court is required to consider under Supreme Court Rule 28.02, and the judgment is affirmed.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court en Banc.

Affirmed.

WESTHUES, C. J., and LEEDY, DALTON and HYDE, JJ., concur.

STORCKMAN, J., dissents in separate opinion filed.

EAGER and HOLLINGSWORTH, JJ., dissent and concur in separate dissenting opinion of STORCKMAN, J.

STORCKMAN, Judge (dissenting).

I regret that I am unable to concur in the majority opinion. I cannot do so because I believe there is such an accumulation of errors that the aggregate spells out a case of legal prejudice and a denial of a fair trial.

It is unnecessary to rehash the deficiencies found to exist in instruction No. 10 on self-defense and the assignments of error made as to instructions numbered 8 and 9. They are sufficiently disclosed by their discussion in the majority opinion. But the ruling of the court limiting the number of character witnesses and the instruction on previous good character in my opinion demonstrate decisively that the bounds of fair trial were exceeded.

As the majority opinion recognizes, there is a distinction between evidence relating to the character and reputation of an ordinary witness and that of the defendant in the case. The relevant character trait of an ordinary witness is his reputation for truth and veracity which is a collateral issue. The evidence of the defendant's "good character" relates to the essential traits of character involved in the offense for which he is on trial. State v. Robinson, 344 Mo. 1094, 130 S.W.2d 530, 531[2]. Such evidence goes to "the improbability of his committing the offense charged" and is *substantive proof* of his innocence. State v. Nienaber, 347 Mo. 541, 148 S.W.2d 537; State v. Robinson, 344 Mo. 1094, 130 S.W.2d 530; State v. Taylor, 293 Mo. 210, 238 S.W. 489; 22A C.J.S. Criminal Law § 676, p. 699. An instruction on the defendant's "good character" is specifically required. Section 546.-070(4). Thus, by statute the good character of the accused is one of the issues in the case on which it is mandatory that an instruction be given for the jury's information in giving their verdict.

I doubt the validity of a court rule which arbitrarily limits the number of the defendant's character witnesses to a specific number. In State ex rel. Plummer v. Gideon, 119 Mo. 94, 24 S.W. 748, it was held that a rule of court limiting to fifteen the number of subpoenaes for witnesses to which one accused of murder is entitled as of right is void as being in violation of what is now § 18a, Art. I, Constitution of Missouri, V.A.M.S., providing that the accused shall have process to compel the attendance of witnesses in his behalf.

In the present case the trial court indicated reliance upon a court rule or custom in limiting the number of witnesses. In ruling, he stated: "Ordinarily we only permit three, and we have permitted four." The general rule stated in 23 C.J.S. Criminal Law § 1042, p. 1178 is: "Generally, in restricting the number of witnesses, care must be exercised to avoid an undue intrusion on the substantial right of accused to a fair trial. Accordingly, it has been held that this discretion of the court does not extend to limiting the number of witnesses at the commencement of the trial before the exigencies of the case are developed; that the court should not have a rule or make a rule in advance of the adduction of evidence limiting the number of witnesses; and that the number of witnesses that may be permitted to testify should be governed by the circumstances in each particular case." See also 22A C.J.S. Criminal Law § 677(1), p. 709.

In State v. Mahan, Mo., 267 S.W. 866, the attack was upon the reputation of *the prosecuting witness* but the opinion points up that there is no statutory limitation of the number of witnesses stating, 267 S.W. 867–868[2]: "It is true the court has no right to limit the number of witnesses which the defendant may summon in his behalf. State ex rel. Plummer v. Gideon, 119 Mo. 94, 24 S.W. 748, 41 Am.St.Rep. 634. Section 4193, R.S. 1919 [now § 550.170, RSMo 1959, V.A. M.S.], does not limit the number of witnesses which may be produced in proof of any specific facts, but simply limits the assessment of costs in such case. However, the witnesses were not offered to testify to any fact directly affecting the alleged crime, but as to the collateral matter of the reputation of the prosecuting witness." See also State v. Bowerman, 140 Mo.App. 410, 124 S.W. 41.

If the circumstances of a particular case justifies limiting the number of witnesses to the good reputation of the accused, then I think that after the particular situation has developed defendant's counsel should be advised in sufficient time so

that they may select the witnesses they desire to offer. It is common knowledge that lawyers sometimes choose to close the testimony in their case with what they consider to be their best witnesses. In the present case two police officers were among those excluded by the ruling.

The holding on this point in the majority opinion opens the door to further erosion of defendant's rights in this regard. I consider this and the following crossroad points on which the court has taken the wrong way.

As to the instruction on good character, I consider the use of the phrase "if proven to your satisfaction" to be prejudicially erroneous. State v. Adams, Mo., 355 S.W. 2d 21 (No. 48,805, also decided March 12, 1962) held it was reversible error for an instruction to require the defense of insanity to be "established by the evidence to your reasonable satisfaction." Good reputation is no more a collateral issue than insanity. Both of these issues bear directly upon the guilt or innocence of the defendant. I fully concur with the Adams decision and consider the error in this case to be much more grievous in that evidence of good character need only create a reasonable doubt in order to establish the defendant's innocence whereas insanity is an affirmative defense which the defendant has the burden of proving by the preponderance of the evidence. In this regard the majority opinion conflicts with the Adams case and is out of harmony with other decisions of this court.

The majority opinion in this case tends to destroy or at least impair the salutary effect of the Adams decision.

The two cases relied upon by the majority opinion for "somewhat similar language in good character instructions" are not controlling or persuasive. In State v. Nienaber, 347 Mo. 541, 148 S.W.2d 537, the words were "if established" as contrasted with "if proven to your satisfaction" in the instant case. The words "to your satisfaction" were not in the Nienaber

instruction and the blow was not softened by *reasonable* satisfaction as in State v. Adams which was nevertheless reversed. In State v. Lasson, 292 Mo. 155, 238 S.W. 101, the term "you are satisfied beyond a reasonable doubt" was not used in the same connection; it dealt with the guilt of the defendant on all of the evidence and not with proof of the defendant's good reputation to the satisfaction of the jury. In fact the first part of the Lasson instruction has none of the objectionable language because it refers to "the testimony relating to his character" much as if the first part of the present instruction had said "the evidence relating to the previous good character of the defendant for being a peaceable and law-abiding citizen" which would harmonize it with the latter part of the instruction and remove the temptation to use the phrase "if proven to your satisfaction" or similar objectionable language.

For these reasons I respectfully dissent.